UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| SHIRLEY NEWMAN and ANTHONY BUTLER, | NO. CIV. 2:09-3441 WBS KJN |
| Plaintiffs, | MEMORANDUM AND ORDER RE: MOTION TO DISMISS |
| v. | |
| SAN JOAQUIN DELTA COMMUNITY COLLEGE DISTRICT; DANIELE RULEY; and JAMES WOOD, | |
| Defendants. | |

----oo0oo----

Plaintiffs Shirley Newman and Anthony Butler brought this action under 42 U.S.C. § 1983 against defendants San Joaquin Delta Community College District ("Delta College"), Daniele Ruley, and James Wood for alleged violations of their constitutional rights. Presently before the court is defendant Wood's motion to dismiss plaintiffs' Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).

1

I.   <u>Factual and Procedural Background</u>

In 2008, plaintiffs were students at Delta College. (SAC ¶ 11.)  Plaintiff Newman allegedly suffers from post-traumatic stress disorder and spinal damage and disease. (<u>Id.</u> ¶ 10.)  Delta College was allegedly aware of Newman's ailments, since she had suffered anxiety attacks on numerous occasions. (<u>Id.</u> ¶ 13.)  Newman wears a medic-alert bracelet on her wrist as a result of her medical conditions that lists her medical aliments and Butler as an emergency contact. (<u>Id.</u> ¶ 10)  Butler is Newman's husband and legally designated care provider. (<u>Id.</u> ¶ 11.)

On March 13, 2008, plaintiffs were attending class at Delta College. (<u>Id.</u> ¶ 12.)  At approximately 11:30 a.m., Butler was attending a writing lab class in the Holt Building on the Delta College campus. (<u>Id.</u>)  At the time, Newman was attending a different class in the Holt Building. (<u>Id.</u>)  During her class, Newman allegedly began suffering from extreme anxiety and left her classroom to go to Butler's class, as she normally would during an anxiety attack. (<u>Id.</u> ¶ 13.)  Upon entering the classroom Butler occupied, the class's instructor, Dr. Elizabeth Maloney, allegedly escorted Newman and Butler into a private classroom. (<u>Id.</u>)  In the room, Newman allegedly knocked some items off of a desk and said she was "looking for something to hurt somebody." (<u>Id.</u>)  Patti Lynn Drake, who was in the room at the time, left and called the Delta College police, mentioning that Newman was ill. (<u>Id.</u>)

The Delta College Police call center dispatched Delta College Police Officers Ruley and Wood to investigate. (<u>Id.</u> ¶

2

1  14.)  When Ruley and Wood arrived at the classroom, plaintiffs
2  were allegedly peacefully leaving.  (Id. ¶ 15.)  Wood allegedly
3  attacked Butler without provocation and used unreasonable force
4  in dragging him to the ground, restraining Butler face-down.
5  (Id.)  Ruley allegedly threw Newman against a wall with a great
6  amount of force.  (Id.)  Ruley allegedly remarked that she had
7  just had a great workout using force against Newman and made
8  racially derogatory remarks.  (Id. ¶¶ 15-16.)  Plaintiffs were
9  allegedly then detained by Ruley and Wood.  (Id. ¶¶ 15, 18.)

10          On March 14, 2008, plaintiffs received a letter from
11 Delta College's Vice President of Student Services, Jose Michel,
12 temporarily suspending them for an alleged assault on a Delta
13 College police officer.  (Id. ¶ 20(l).)  Michel sent plaintiffs
14 another letter on March 17, 2008, suspending them through the
15 summer of 2008 for assaulting a campus police officer and causing
16 a disturbance.  (Id. ¶ 20(m).)  Delta College upheld the
17 suspensions on April 8, 2008, allegedly based in part on false
18 testimony from Ruley that plaintiffs were struggling with each
19 other.  (Id. ¶ 20(o).)

20          In May 2008, Delta College allegedly provided that
21 Newman could be reinstated for the summer 2008 session if she
22 brought a recent evaluation by a licensed psychiatrist regarding
23 her treatment plan.  (Id. ¶ 20(p).)  Newman was denied summer
24 enrollment after she provided a letter from a therapist instead
25 of a psychiatrist.  (Id. ¶ 20(q).)  In June 2008, Delta College
26 contacted Newman and identified that her fall 2008 enrollment
27 would also be contingent upon receiving a letter from a
28 psychiatrist about her treatment plan.  (Id. ¶ 20(r).)  On July

3

21, 2008, Newman's suspension was rescinded and her student record was allegedly cleared. (Id. ¶ 20(s).)

Plaintiffs filed this action on September 12, 2008, in San Joaquin County Superior Court and subsequently filed a First Amended Complaint on November 19, 2009. (Docket No. 1.) Defendants subsequently removed the case to this court on December 11, 2009. (Id.) Defendant Woods filed a motion to dismiss the First Amended Complaint on January 5, 2010. (Docket No. 8.) In response, plaintiffs filed a statement of non-opposition and requested leave to file a Second Amended Complaint ("SAC") (Docket No. 12), which the court granted. (Docket No. 25.) Currently before the court is Wood's motion to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

II. Discussion

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). To survive a motion to dismiss, a plaintiff needs to plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and where a complaint pleads facts that are "merely

---

[1] Plaintiffs have conceded that their tenth cause of action for injunctive relief is inappropriate as to Wood and should be dismissed.

4

consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 556-57).

### A.   Battery Claims

Plaintiffs' first causes of action assert claims against defendants for common law battery. Under California law, the elements of battery are "(1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff." Brown v. Ransweiler, 171 Cal. App. 4th 516, 526-27 (2009) (internal citations omitted). When a state law battery claim is brought against a police officer, "a plaintiff must prove that the peace officer's use of force was unreasonable . . . . The question is whether a peace officer's actions were objectively reasonable based on the facts and circumstances confronting the peace officer." Id. at 527.

Plaintiffs have alleged that they were peacefully leaving a classroom at Delta College when Wood forcefully dragged Butler to the ground and restrained him there face-down. (SAC ¶ 15.) Plaintiffs allege that they did not fail to comply with any of Wood's commands and never attempted to resist Wood or flee the area. (Id. ¶ 17.) While Wood contends that he did not use excessive force because there was a legitimate threat of violence from plaintiffs, at this stage of the proceedings, plaintiffs' allegations must be taken as true. See Scheuer, 416 U.S. at 236. Accordingly, the SAC has plausibly plead that Wood acted

5

1 unreasonably by dragging Butler to the ground and holding him
2 there in response to plaintiffs peaceful departure from a
3 classroom.  Butler has therefore adequately pled a claim for
4 battery against Wood.  However, the SAC does not allege that Wood
5 used any force against Newman.  Without such allegations, Newman
6 cannot sustain a cause of action for battery against Wood, and
7 the court must therefore dismiss Newman's battery claim against
8 him.

     B.   <u>Section 1983 Claims</u>

Plaintiffs' second claims are for violations of their civil rights under 42 U.S.C. § 1983.  While § 1983 is not itself a source of substantive rights, it provides a cause of action against any person who, under color of state law, deprives an individual of federal constitutional rights or limited federal statutory rights.  42 U.S.C. § 1983; <u>Graham v. Connor</u>, 490 U.S. 386, 393-94 (1989).  Plaintiffs allege that Wood violated their rights to be free from unreasonable seizures, both by detention absent probable cause and by the use of excessive force, under the Fourth and Fourteenth Amendments.[2]  (SAC ¶ 25.)

Wood contends that plaintiffs' § 1983 claims fail because he is entitled to qualified immunity.  The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known."  <u>Pearson v. Callahan</u>, 129

---

[2] At oral argument plaintiffs clarified that they are asserting a violation of the Fourteenth Amendment only insofar as the Fourteenth Amendment incorporates the Fourth Amendment against the states.

6

S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)) (internal quotations omitted).

To determine whether an official is entitled to qualified immunity, a court may begin with the question of whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001) (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)) rev'd Pearson, 129 S. Ct. 808 (2009) (holding that the Saucier two-step procedure for determining qualified immunity in which the court must first determine whether there is a constitutional violation is not mandatory). Assuming there is a constitutional violation, the second question the court must ask is whether the officer's conduct violated a clearly established right. Id. Finally, if the right is clearly established, the court should then determine whether a reasonable officer would know that his conduct violated the clearly established right. See Anderson v. Creighton, 483 U.S. 635, 640 (1987). If the court finds the constitutional right was clearly established such that a reasonable officer would be aware that his or her conduct was unconstitutional, then the officer is not entitled to qualified immunity. Pearson, 129 S. Ct. at 816.

The facts plaintiffs allege plead conduct by Wood that would violate Butler's Fourth and Fourteenth Amendment rights.[3]

---

[3] As previously noted, the SAC does not plead any facts indicating that Wood used force against Newman. The court must therefore dismiss Newman's § 1983 claim against Wood, since plaintiffs' § 1983 claim relies solely on the use of excessive force in violation of the Fourth Amendment.

7

Under the Fourth Amendment, police may use only such force during an arrest as is objectively reasonable under the circumstances. Graham v. Connor, 490 U.S. 386, 397 (1989).  A determination of whether the force an officer used was reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id. (citing Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)).  Taking plaintiffs' allegations as true, Wood used unreasonable force against Butler by dragging him to the ground and pinning him there because plaintiffs allegedly posed no danger to the officers, did nothing to provoke them, and there was no severe crime at issue.  See Robinson, 278 F.3d at 1014 (holding an officer's use of force was excessive in the absence of any of the factors enumerated in Graham); see also Felix v. McCarthy, 939 F.2d 699, 701-02 (9th Cir. 1991); Priester v. City of Riviera Beach, 208 F.3d 919, 927 (11th Cir. 2000).  Accordingly, Butler has sufficiently alleged a violation of his constitutional rights by Wood.

The next consideration is whether Wood's conduct violated a clearly established right.  For the purposes of qualified immunity, "clearly established" means that, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson, 483 U.S. at 640.  The Supreme Court has further explained "that what 'clearly established' means . . . depends largely 'upon the level of generality at

8

which the relevant "legal rule" is to be identified.'" <u>Wilson v. Layne</u>, 526 U.S. 603, 614 (1999) (quoting <u>Anderson</u>, 483 U.S. at 639). Defined broadly enough, every § 1983 case could have a clearly established right at issue, while a rigid, fact-bound interpretation of the right at stake would make it extremely difficult to prove that any right is clearly established. <u>See</u> <u>Anderson</u> 483 U.S. at 639-40 ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."). A court's definition of the right at issue must therefore strike a balance between these two extremes.

    The right not to be subjected to unprovoked force from a police officer by being dragged to the ground and held there while attempting to peacefully leave an area is clearly established. The Supreme Court and Ninth Circuit have found that an unprovoked use of force is unreasonable under the Fourth Amendment in the absence of any resistance, attempt at flight, danger to the officer, or any other exigent circumstance. <u>See</u> <u>Graham</u>, 490 U.S. at 397; <u>Garner</u>, 471 U.S. at 8-9; <u>Robinson</u>, 278 F.3d at 1014; <u>Priester</u>, 208 F.3d at 927. "[P]olice officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever." <u>Lanigan v. Village of E. Hazel Crest, Ill.</u>, 110 F.3d 467, 475 (7th Cir. 1997). Wood's allegedly unprovoked attack on Butler therefore violated Butler's clearly established right to be free from unprovoked force by being dragged to the ground and pinned there.

    The final question is whether a reasonable officer

would know that the conduct as alleged in the Complaint violated Butler's clearly established right. Over the last thirty years, courts have clearly articulated that police officers may not use force against a suspect without any provocation whatsoever. See Graham, 490 U.S. at 397; Garner, 471 U.S. at 8-9; Robinson, 278 F.3d at 1014; Priester, 208 F.3d at 927; Lanigan, 110 F.3d at 475. Given this history, any reasonable officer would know that he or she does not have the right to drag a person to the ground and pin that person there in the absence of flight, provocation, or other exigent circumstances. At this preliminary stage of the proceedings, the facts as pled do not entitle Wood to qualified immunity. Accordingly, the court will deny Wood's motion to dismiss Butler's § 1983 claim.

    C.    Intentional Infliction of Emotional Distress Claims

The elements for the tort of intentional infliction of emotional distress are "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Christensen v. Superior Court, 54 Cal. 3d 868, 904 (1991) (internal quotations and citations omitted). To be outrageous, conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." Christensen, 54 Cal. 3d at 904; see also Cook v. Lindsay Olive Growers, 911 F.2d 233, 239 (9th Cir. 1990).

Plaintiffs' claims for intentional infliction of emotional distress incorporates the facts previously alleged in

10

the SAC. The SAC alleges that Wood engaged in extreme and outrageous conduct by dragging Butler to the ground unprovoked and that Butler suffered severe emotional distress as a result. Viewing the facts in a light most favorable to the plaintiffs, an allegedly unprovoked attack by a police officer against Butler could be considered extreme and outrageous conduct. See Graves v. City of Stockton, No. Civ. 04-0430 DFL KJM, 2006 WL 768831, at *5 (E.D. Cal. Mar. 27, 2006); Lewis v. City of Portland, No. Civ. 99-1279-AS, 2000 WL 254004, at *3 (D. Or. Jan. 21, 2000); Restatement (Second) of Torts § 46 cmt. e (1965) ("In particular, police officers . . . have been held liable for extreme abuse of their position."). However, the SAC does not mention any conduct by Wood against Newman intended to cause infliction of emotional distress. The SAC has accordingly plead sufficient facts alleging intentional infliction of emotional distress for Butler, but not for Newman. The court will therefore deny Wood's motion to dismiss Butler's claim and will grant Wood's motion as to Newman's claim.[4]

   D.   Negligent Infliction of Emotional Distress Claims

"Negligent infliction of emotional distress is not an independent tort; it is the tort of negligence to which the traditional elements of duty, breach of duty, causation and damages apply." Ess v. Eskaton Props., Inc., 97 Cal. App. 4th 120, 126 (2002). Under California law, police officers have a duty not to use excessive force. Knapps v. City of Oakland, 647

---

[4] Wood's additional contention that there is no personal recovery available against him for intentional infliction of emotional distress relies on his incorrect assertion that he has been sued only in his official capacity.

11

F. Supp. 2d 1129, 1164 (N.D. Cal. 2009) (citing Munoz v. City of Union City, 120 Cal. App. 4th 1077, 1101 (2004)). "[W]hether an officer breached such duty is analyzed under the reasonableness standard of the Fourth Amendment to the United Constitution." Id. (internal citations omitted). The court has already found that the facts alleged in the Complaint sufficiently state a violation of Butler's Fourth Amendment rights by Wood and accordingly plead a breach of a cognizable duty by Wood. The Complaint further alleges that this breach of duty caused Butler to suffer severe emotional damage. Accordingly, Butler has stated a cause of action for negligent infliction of emotional distress against Wood.

Plaintiffs' negligent infliction of emotional distress claims, however, do not distinguish between the emotional harm suffered by Butler and Newman. The court has already repeatedly noted that, according to the SAC, Wood allegedly only attacked Butler. The SAC lacks any factual or legal explanation as to how Wood breached a duty to Newman or any causal link between his conduct and damage to Newman. Accordingly, the court must dismiss Newman's negligent infliction of emotional distress claim against Wood.

E. False Imprisonment Claims

"The elements of a tortious claim of false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." Easton v. Sutter Coast Hosp., 80 Cal. App. 4th 485, 496 (2000). Wood claims that plaintiffs' fifth cause of action for false imprisonment must be dismissed "because

12

there was no arrest, which is a necessary element for the tort of false imprisonment." (Mot. Dismiss (Docket No. 27) at 9:9-10.) However, the SAC specifically alleges that defendants "restrained and detained" plaintiffs (SAC ¶ 37) and furthermore arrested them. (Id. ¶ 18.) Although Wood disputes that an arrest occurred, resolution of such factual questions is inappropriate on a motion to dismiss. The court will accordingly deny Wood's motion to dismiss plaintiffs' false imprisonment claims.

      F.    Disability Discrimination Claims

The SAC's sixth (violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794), seventh (violation of Section 503 of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12183), eighth (violation of California Civil Code section 51, the California Unruh Civil Rights Act ("UCRA")) and ninth (further violations of the UCRA) causes of action each allege that defendants retaliated against plaintiff Newman by suspending her for exercising her educational rights as a disabled person. To state a claim for discrimination under section 504 of the Rehabilitation Act, the ADA, or the UCRA against an educational institution, a plaintiff must allege that (1) she is disabled; (2) she is qualified to remain a student at the college; (3) there was some adverse education action by the college because of her disability; and (4) the college receives federal financial assistance (for the Rehabilitation Act claim) or is a public entity (for the ADA and UCRA claims). Zukle v. Regents of the Univ. of Cal., 166 F.3d 1041, 1045 (9th Cir. 1999).

The SAC's claims for disability discrimination do not

13

identify what, if any, retaliatory actions were taken against Newman by Wood. There are no allegations that Wood was involved in any of Delta College's decisions to suspend Newman or had any decision making authority at Delta College. The sixth through ninth claims in the SAC only mention conduct by Delta College and unnamed Doe defendants; Wood is not so much as mentioned by name in any of the claims. The SAC does not contain any factual averments that make Wood's liability for any disability discrimination plausible. Without any allegation that Wood caused any discrimination against Newman based on her disabilities, her claims under the Rehabilitation Act, ADA, and UCRA cannot survive a motion to dismiss. See Iqbal, 129 S. Ct. at 1949; see also Pomerantz v. Los Angeles County, 674 F.2d 1288, 1291 (9th Cir. 1982) (holding board of supervisors not liable for ADA claim when they did not participate in the allegedly discriminatory process).

At oral argument, plaintiffs contended that Harris v. Mills, 572 F.3d 66 (2d Cir. 2009), supports the proposition that Wood can be individually liable for disability discrimination under the ADA. However, Harris simply stands for the proposition that members of an education board can be sued in their official capacity for decisions made in violation of the ADA. See id. at 72. Harris does not go so far as to impose individual ADA liability on a police officer because he issues a report that is later used by an educational institution to discriminate against a student in violation of the ADA. Plaintiff Newman has cited no other authority for this proposition. Regardless, the SAC does not plead any facts that indicate which, if any, of Wood's

14

actions violated the ADA.  Accordingly, the court will grant Wood's motion to dismiss Newman's Rehabilitation Act, ADA, and UCRA-based claims.

IT IS THEREFORE ORDERED that Wood's motion to dismiss the SAC as to the claims against him be, and the same hereby is, GRANTED with respect to Newman's battery, § 1983, intentional infliction of emotional distress, negligent infliction of emotional distress, Rehabilitation Act, ADA, UCRA, and injunctive relief claims and Butler's injunctive relief claim and DENIED in all other respects.

Plaintiffs have twenty days from the date of this Order to file an amended complaint, if they can do so consistent with this Order.

DATED:  May 27, 2010

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE