1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SHIRLEY A. NEWMAN and
     ANTHONY C. BUTLER,
11
                   Plaintiffs,                No. 2:09-cv-03441 WBS KJN
12
             v.
13
     SAN JOAQUIN DELTA COMMUNITY
14   COLLEGE DISTRICT, a public entity;
     DANIELLE RULEY, JAMES WOOD,
15
                   Defendants.               ORDER
16
     _____/
17

18          At the request of Defendant San Joaquin Delta Community College District

19   ("District"), plaintiff Shirley A. Newman ("Newman") stipulated to attend and undergo an

20   independent mental examination pursuant to Federal Rule of Civil Procedure 35.  (Joint

21   Statement ("JS") Dkt. No. 71 at 6.)[1]  Although she agreed to undergo a mental exam, Newman

22   sought to impose various limitations upon it and challenged the qualifications of the District's

23   ////

24   ////

25   _____

26          [1]   The parties' joint statement is on the court's docket at entry number 71, and the related
     declarations are on the court's docket at entries numbered 72 through 75.

1

1  proposed examiner.  (Id.)  Presently before the court is the District's motion to compel

2  Newman's mental examination on the terms and conditions the District requests.   (Dkt. No. 53.)[2]

3          The court heard this matter on its law and motion calendar on February 3, 2011.

4  Attorney J. Anthony Abbott appeared on behalf of the District.  Attorney Kenneth N. Meleyco

5  appeared on behalf of Newman.

6          At the hearing, the court heard arguments from counsel on the issues of:

7  (1) whether the District's proposed examiner is qualified to administer the examination;

8  (2) whether the exam should have a time limit of less than the requested 11 a.m. to 5 p.m.

9  sessions for two days; (3) whether the court should prohibit certain tests from being administered

10 during the mental exam; (4) whether a "support person" should be present in the examination

11 room for any portion of the mental exam; (5) whether the clinical examination portion of the

12 mental exam and/or the testing portion of the mental exam should be videotaped; (6) and in the

13 absence of an order permitting videotaping, whether the clinical examination portion of the

14 mental exam should be audiotaped.

15          For the reasons described during the hearing and within this order, the court grants

16 the District's motion, but permits audiotaping of the clinical examination portion of Newman's

17 mental exam.

18 I.    BACKGROUND

19          The operative Third Amended Complaint alleges that plaintiffs are husband and

20 wife and were students enrolled in and attending classes at Delta College in March 2008.[3]  (Third

21 Am. Compl. ¶¶ 10-11, 13, Dkt. No. 40.)  Newman allegedly "suffers from post-traumatic stress

22 disorder and spinal damage and disease" and, as a result, always wears on her wrist a "medic-

23

24          [2] This case was referred to the undersigned pursuant to Eastern District of California
   Local Rule 302(c)(1) and 28 U.S.C. § 636(b)(1), and was reassigned by an order entered
25 February 11, 2010 (Dkt. No. 31).

26          [3] The District filed an answer to the Third Amended Complaint.  (Dkt. No. 49.)

2

1  alert bracelet," which states, in part: "Diabetic, epileptic, Gabapentin, high blood pressure,

2  psychotic disorder . . . ."  (Id. ¶ 10.)  The medic-alert bracelet also allegedly lists Anthony Butler,

3  a plaintiff in this action, as an emergency contact and contains contact information for Butler.

4  (Id. ¶ 10.)  Plaintiffs allege that as a result Newman's disabilities, Newman suffers from "severe

5  and extreme anxiety" from time to time.  (Id. ¶ 13.)  They also allege that Delta College was

6  aware of Newman's disabilities.  (Id.)

7          On March 13, 2008, plaintiffs were allegedly attending classes in separate

8  classrooms at Delta College.  (Third Am. Compl. ¶ 11-12.)  Plaintiffs allege that at

9  approximately 11:30 a.m., Newman began suffering from "severe and extreme anxiety" and

10  exited her classroom and went to the classroom where Butler, her husband, was attending class.

11  (Id. ¶ 13.)  This was allegedly Newman's "usual course of conduct when struck by anxiety" and,

12  when Newman reached her husband's classroom, the instructor allegedly escorted Newman and

13  Butler to a private room.  (Id.)  Once in the private room, Newman allegedly "knocked some

14  items off a desk and said she was looking for something to hurt somebody."  (Id.)  A woman who

15  was in the room at the time allegedly called the police and reported that Newman was ill.  (Id.)

16  Plaintiffs allege that two officers, Delta College Police Officers Ruley and Wood, were

17  dispatched to the scene.  (Id. ¶ 14.)

18          Plaintiffs allege that although they were "peacefully leaving" the classroom when

19  the Officers Ruley and Wood arrived, the officers attacked plaintiffs.  (See Third Am. Compl.

20  ¶ 15.)  Briefly stated, plaintiffs allege that Officers Ruley and Wood attacked Butler without

21  provocation and used unnecessary and unreasonable force in detaining and restraining Butler.

22  (See id.)  They also allege that Officer Ruley threw Newman "against a stout wall with great and

23  unreasonable force."  (Id.)  Plaintiffs allege that they were then "falsely imprisoned and

24  detained."  (Id.)

25          Plaintiffs allege that they were temporarily suspended from Delta College for an

26  alleged assault on a Delta College police officer.  (See Third Am. Compl. ¶ 21(I).)  As to

1   Newman, continued enrollment at Delta College was allegedly contingent on submitting a recent

2   evaluation by a "licensed (MD) psychiatrist regarding her treatment plan." (Id. ¶ 21(m).)

3   Newman was allegedly denied enrollment because she submitted only a letter from a therapist.

4   (Id. 21(n).)  Plaintiffs allege, however, that Newman's record was ultimately cleared.  (Id. ¶¶

5   21(o)-(p).)

6           Plaintiffs allege that they "were hurt in their health, strength and activity" and

7   sustained "shock and injury to their nervous system and person, all of which said injuries have

8   caused, and continue to cause said Plaintiffs great mental, physical, and nervous pain and

9   suffering." (Third Am. Compl. ¶ 16*.)[4]  Plaintiffs further allege that their injuries "will result in

10  some permanent disability." (Id.)  Additionally, they allege a loss of consortium as to Newman

11  in that Newman's "physical and emotional injuries" have left her "unable to perform the

12  necessary duties as a wife and the work and services usually performed in the care, maintenance

13  and management of the family home." (Id. ¶ 19*.)

14          Plaintiffs' Third Amended Complaint alleges numerous claims against

15  defendants.  Particularly relevant here, plaintiffs allege claims for intentional infliction of

16  emotional distress and negligent infliction of emotional distress against all defendants. (See

17  Third Am. Compl. ¶¶ 28-35.)  Additionally, plaintiffs allege that the District violated the

18  Americans With Disabilities Act, 42 U.S.C. §§ 12101 et seq., as to her and that, as a proximate

19  result of such violation, she "[e]xperienced and continues to experience guilt, hardship, anxiety,

20  indignity, and severe mental and emotional anguish." (See Third Am. Compl. ¶ 55(b).)

21          On November 23, 2010, counsel for the District requested, via e-mail, that

22  Newman voluntarily submit to a neuropsychological examination, to be conducted by Richard J.

23  Perrillo, Ph.D., in San Francisco, California, and provided Newman with a proposed stipulation

24

25      [4]  The Third Amended Complaint contains errors insofar as the sequential numbering of
    paragraphs is concerned.  It contains allegations in paragraphs 1 through paragraph 21(r), but
    thereafter reflects allegations contained in paragraphs 16 through 69.  To the extent cited herein,

26  the second set of paragraphs numbered 16 through 21 will be denoted with an asterisk.

1   and order regarding that examination.  (Abbott Decl. ¶¶ 5-6 & Ex. 3; Prop'd Order, Dkt. No. 53-

2   3, Exh. 3 at 2-3.)  In a letter dated November 23, 2010, Newman's counsel explained that

3   Newman would not submit to the neuropsychological examination because Newman was not

4   claiming any "brain damage."[5]  (Abbott Decl. ¶ 7 & Ex. 4.)

5          In response, the District's counsel sent a letter, dated November 24, 2010, to

6   Newman's counsel explaining why the District believed good cause existed to support the

7   neuropsychological examination.  (Abbott Decl. ¶ 8 & Ex. 5.)  In a letter dated December 1,

8   2010, Newman's counsel conveyed that Newman would not voluntarily submit to the requested

9   examination, arguing that good cause for the examination did not exist because Newman was not

10  claiming brain damage and that the subpoenaed medical records would be adequate substitutes

11  for the examination.  (Abbott Decl. ¶ 9 & Ex. 6.)

12         On December 8, 2010, counsel for the District and Newman met and conferred

13  about the proposed examination and other discovery matters via telephone and, after

14  approximately 30 minutes of discussion, Newman's counsel conveyed that Newman would not

15  agree to the independent neuropsychological examination under any circumstances.  (Abbott

16  Decl. ¶ 10.)  Also on December 8, 2010, Newman's counsel sent a letter to the District's counsel

17  explaining that Newman would not agree to the neuropsychological examination.  (Abbott Decl.

18  ¶ 11 & Ex. 7 ("In regard to the issue of your requested neuropsyche examination, again, we are

19  totally opposed to that on the grounds that there has been no brain damage.  If this were a mental

20  examination with a psychiatrist, of course, the issues would be totally different.").)  On

21  December 10, 2010, the District's counsel sent Newman's counsel a letter expressing that the

22  District would be filing a motion to compel an independent neuropsychological examination.

23  (Abbott Decl. ¶ 12 & Ex. 8.)

24
         [5]  Among other things, Newman's counsel's letter states: "Over the years, a number of
25  different health care providers have diagnosed Shirley Newman with numerous disorders from a
    dissociative identity disorder, panic attack disorder, mood disorder, post traumatic stress
26  syndrome, depression, and schizophrenia."  (Abbott Decl., Ex. 4.)

1    The District's  motion to compel was originally filed on December 10, 2010.

2 (Dkt. No. 53.)  The hearing on that motion was rescheduled three times to permit further meeting

3 and conferring.  (Dkt. Nos. 57, 69, and 70.)

4    Since the original filing of the motion in December 2010, the parties have been

5 able to pare down their disputed issues.  Significantly, the parties have stipulated that:

6 (1) Newman's mental examination may occur in Stockton; (2) Dr. Perrillo may conduct a

7 "standard verbal interview" with plaintiff (but not testing); (3) Dr. Perrillo may administer the

8 "MMPI" but not the "MMPI-RF."  (JS at 6.)  The parties' remaining dispute is about whether

9 various limitations should be imposed upon the stipulated exam.

10    According to the joint statement, the remaining disputed issues are:

11 (A) whether Dr. Perrillo can administer any psychological or neuropsychological tests upon

12 Newman during the mental exam; (B) which specific tests Dr. Perrillo may administer during the

13 exam; (c) the duration of the exam; (D) whether Newman may have a "support person" in the

14 room during the clinical interview portion of the exam and/or the testing portion; (E) whether the

15 clinical examination and/or testing may be recorded.  (JS at 6.)

16    Newman argues that Dr. Perrillo is unqualified to conduct all aspects of the exam,

17 that he seeks to perform various "redundant" and "unnecessary" tests upon Newman, and that an

18 exam with six-hour sessions over two days is unreasonably lengthy.  (JS at 3, 7-12; Dkt. No.

19 53-3.) Plaintiff argues that there is good cause requiring a "support person" to accompany her

20 during all portions of the exam.  (JS at 15-16.)  Plaintiff also argues that her exam should be

21 videotaped, or at the very least, recorded via audiotape.  (JS at 20-21.)

22    The District opposes each of these arguments, and asks the court to order that

23 Newman's independent mental examination be conducted at the following "time, place, manner,

24 conditions, and scope" under Federal Rule 35(a)(2)(b): (1) February 8, 2011, and if necessary,

25 February 9, 2011, (JS at 2); (2) in the office of plaintiff's attorney in Stockton, California (JS at

26 2); (3) examination by Dr. Perrillo (JS at 2); (4) under the terms and conditions set out in

6

1    Dr. Perrillo's declaration and the proposed Order filed 12/10/10 (providing that examination will

2    not go past 5:00 p.m. each day, listing tests that may be implemented, etc.).  (JS at 2.)

3           The pending motion and the parties' joint statement re: discovery disagreement,

4    filed pursuant to Eastern District Local Rule 251, address these remaining disputed issues.

5    II.    <u>DISCUSSION</u>

6           The Federal Rules of Civil Procedure provide that the court "may order a party

7    whose mental or physical condition . . . is in controversy to submit to a physical or mental

8    examination by a suitably licensed or certified examiner."  Fed. R. Civ. P. 35(a)(1).  Because the

9    parties have stipulated to Newman's mental examination but disagree about various parameters

10   of the exam, they have asked the court to decide those parameters.  (JS at 6.)  This court has

11   discretion to do so.  <u>E.g.</u>, <u>Franco v. Boston Scientific Corp.</u>, No. 05-CV-1774 RS, 2006 WL

12   3065580, *1-2, (N.D. Cal., Oct. 27, 2006) (not reported) (noting that a court has discretion to

13   place "limits and conditions" on a mental exam under Rule 35, but ultimately holding that where

14   the plaintiff has pre-existing mental conditions, the exam's scope should not be limited, as the

15   defendant needs to determine "what effects are attributable to" the alleged incident).)

16          A.     <u>Qualifications To Administer The Mental Examination</u>

17          The District argues that its proposed examiner, Dr. Richard J. Perrillo, is qualified

18   to administer and interpret psychological and neuropsychological tests upon Newman.  (JS at 7.)

19   The District's argument is well-taken.

20          Dr. Perrillo is a licensed psychologist with a Ph.D in Clinical/Counseling

21   Psychology, has 25 years postgraduate experience in the diagnosis of organic brain dysfunctions

22   and emotional/mental disorders, has served as an expert witness in cases involving brain and

23   emotional functioning, and he has served as an agreed medical examiner in Workers' Comp.

24   cases, and has administered and interpreted psychological and neuropsychological testing on

25   thousands of individuals in his career.  (JS at 3, 7.)  Dr. Perrillo is licensed in Forensic, Clinical,

26   ////

7

1  and Neuropsychology (License No. PSY9404, issued 1986).  (JS at 6.)  Dr. Perrillo has never met

2  Newman.  (Id.)

3         Newman counters that Dr. Perrillo is unqualified to conduct her mental exam.  (JS

4  at 8-9.)  Newman argues that Dr. Perrillo is not suitably qualified  to administer "neuro psych"

5  tests and that he is not  a "board certified" neuro-psychologist.   (JS at 7.)  Newman also argues

6  Dr. Perrillo's certification came from "various for-profit organizations that basically issue a

7  certification for money . . . ."  (JS at 8.)

8         However, Newman ultimately retreats from her arguments against Dr. Perrillo's

9  administration of her exam.  For instance, in the parties' joint statement, Newman's

10  "Conclusion," concedes: "Defendants have the right to pick their examiner in this situation.  The

11  fact that he is not certified is their choice.  However, it gives the defense an unfair advantage...to

12  allow [Dr. Perrillo] carte blanche for 12 hours in private."  (JS at 8.)  And during the hearing on

13  the matter, counsel for Newman conceded that the District was free to select their examiner and

14  admitted that Dr. Perrillo could conduct Newman's mental exam, acknowledging Newman's

15  ability to challenge Dr. Perrillo's qualifications at trial.

16         Rule 35(a)(1) requires that a mental examination be conducted by "a suitably

17  licensed or certified examiner."  The Advisory Notes to Rule 35 explain that the court has

18  discretion to determine whether the proposed examiner is "suitably licensed or certified," but this

19  descriptor does not necessarily mean board certification.  Fed. R. Civ. P. 35(a) advisory

20  committee's note (1991 amend.).  Indeed, whether someone is "suitably licensed or certified" is a

21  function of whether the individual has the requisite level of expertise to conduct the proposed

22  exam.  (Id.)  The term was "intended to encourage the exercise of [judicial] discretion, especially

23  with respect to examinations by persons having narrow qualifications."  (Id.)  In general, a

24  defendant wishing to conduct a Rule 35 mental exam has the right to choose its own examiner.

25  See Ragge v. MCA/Universal Studios, 165 F.R.D. 605, 609 (C.D. Cal. 1995) (although the court

26  "is not required to accept defendants' proposed examiner as the examining psychologist, only if

8

1 | plaintiff raises a valid objection will the Court appoint a different examiner.")[6]  Here, Plaintiff

2 | has not raised a valid objection to Dr. Perrillo.

3 |             Newman has not shown that Dr. Perrillo is unqualified to administer the stipulated

4 | mental exam.  Newman does not cite authority indicating that Rule 35's "suitably licensed or

5 | certified" requirement entails being certified by any particular board of Newman's choosing.

6 | Further, the "proposed examination" appears to call for "expertise that the proposed examiner"

7 | has.  See Fed. R. Civ. P. 35(a) Advisory Committee's note, particularly the "1991 amendment."

8 | Dr. Perrillo has declared his expertise in neuropsychology and his experience giving numerous

9 | psychological and neuropsychological tests of the same type he will use in the proposed

10 | examination of Newman.  There is no evidence Dr. Perrillo is biased against Newman, and

11 | Newman does not advance that argument.  See Ragge, 165 F.R.D. at 609 (C.D. Cal. 1995) (a

12 | defendant wishing to conduct a Rule 35 mental exam has the right to choose its own examiner,

13 | provided such person is qualified and cannot be shown upon real objective evidence to have a

14 | pre-existing bias against the examinee).

15 |             Accordingly, for these reasons and those stated on the record during the hearing,

16 | the court orders that Dr. Perrillo may conduct the entirety of Newman's mental examination.

17 |     B.     The Tests To Be Performed

18 |             Dr. Perrillo identified 26 potential tests that will comprise the universe of tests he

19 | may choose to administer to Newman.  (JS at 8; Prop'd Order, Dkt. No. 53-3, Exh. 3 at 2-3.)

20 | Newman takes issue with many of these potential tests, and argues that the court should exercise

21 | its discretion to limit the scope of the testing.  (JS at 10-11.)  Newman and her expert argue that

---

[6]  In Ragge, the court stated:

> One of the purposes of Rule 35 is to "level the playing field" between parties in cases in which a party's physical or mental condition is in issue. . . . A plaintiff has ample opportunity for psychiatric or mental examination by his/her own practitioner or forensic expert.

Ragge, 165 F.R.D. at 608 (citations omitted and modifications in original).

9

1   Dr. Perrillo's proposed tests are "inappropriate" for Newman's injuries as she complains only of

2   back pain, herniated disk, anxiety and emotional distress.  (JS at 10-11.)  Newman also argues

3   that Dr. Perrillo's tests are redundant and thus "burdensome."  (JS at 10.)  Newman and her

4   expert further argue that Dr. Perrillo's proposed IQ tests, motor function tests, language tests,

5   frontal lobe measures, other "batteries of redundant tests," and MMPI-RF are all "unnecessary."

6   (JS at 11.)

7            The District counters that the result of one test will dictate the nature of

8   subsequent testing. (JS at 8-9.)   The District explains that mental examinations must be "fluid"

9   and require a flexible determination of the testing necessary.  (JS at 8-9.)  The District argues that

10  the proposed tests will help gauge the extent to which the alleged incident exacerbated

11  Newman's pre-existing mental health issues, and notes that "if the 'wrong' tests are

12  administered," Newman is free to cross-examine on this issue during deposition and trial.  (Id.)

13  The District's arguments are well-taken.

14            The court has not been presented with evidence that certain tests will be

15  dangerous or harmful to Newman; instead, Newman's argument is that she should not be

16  subjected to "unnecessary" or duplicative tests that might be "burdensome" to her.  (JS at 10-12.)

17  As discussed on the record during the hearing, the court is not a medical professional.  Absent

18  evidence that a certain test would cause actual harm to Newman, the court cannot itemize tests

19  that are truly unnecessary or appropriate.   These tests are complex, as are Newman's alleged

20  mental issues and their potential causes, and absent a showing of danger or actual harm this court

21  will not hamper the defendants' need for a complete examination of Newman's mental health.

22  See Ragge, 165 F.R.D. at 609 ("[b]ecause the mental examination provides one of the few

23  opportunities for a defendant to have access to a plaintiff, and the only opportunity for a

24  defendant to have a plaintiff examined by defendant's expert, some preference should be given to

25  allowing the examiner to exercise discretion in the manner and means by which the examination

26  is conducted, provided it is not an improper examination"; and where the proposed examiner's

10

1  "declaration sets forth the nature of the examination to be conducted, including the types of

2  psychological tests he may choose to administer . . . It would serve no purpose to require

3  [examiner] to select, and disclose . . . specific tests.")[7]

4          Accordingly, for these reasons and those stated on the record during the hearing,

5  the court orders that of the tests Dr. Perrillo proposed (Prop'd Order, Dkt. No. 53-3, Exh. 3 at 2-

6  3), he may conduct the tests he deems necessary.  Of course, Dr. Perrillo is expected to act within

7  the bounds of his professional and ethical duties at all times.

8          C.      The Duration Of The Exam

9          The District proposes that Newman's mental examination occur over two days

10  from 11:00 am to 5:00 pm each day, to occur on February 8 and 9, 2011.  (JS at 3; Prop'd Order,

11  Dkt. No. 53-3 at 2.)  According to the District, because of Newman's alleged mental issues it

12  may take her longer than most patients to complete a given test, so Dr. Perrillo seeks to have

13  examination go into a second day if necessary.  He would like to eliminate time pressure on

14  Newman during testing, and would like to permit Newman to take breaks between tests.  (JS at

15  12-13.)  Newman argues that the District's proposed two-day testing is excessive and requests

16  that "this court set reasonable limits by time" upon the exam.  (JS at 24.)

17          Neither party cited compelling, binding, or persuasive authority on the requisite

18  length of mental examinations under Rule 35.  Absent such authority, and as discussed on the

19  record during the hearing, the District's proposed duration is reasonable.  Simonelli v. University

20  of California-Berkeley, No. C 02-1107 JL, 2007 WL 1655821, at *1-3 (N.D. Cal. 2007)

21  (unpublished) (denying plaintiff's request to limit a mental examination to three hours, because

22  "the interests of both parties in the examiner's arriving at an accurate diagnosis militates against

23

24          [7] However, limiting the exam to two five-hour sessions will effectively require
   Dr. Perrillo to administer what he deems to be only the most pertinent and instructive tests, likely
25  eliminating those tests that are truly unnecessary or redundant.  At least to some extent, this
   should assuage Newman's concerns regarding unnecessary testing.

26

1  setting an artificially short time limit on Plaintiff's examination," and ordering the exam to last

2  the requested eight hours given that the plaintiff was not a child, and defendants were not seeking

3  an unlimited time for the exam.)

4  For these reasons and those stated on the record during the hearing, the court

5  orders two, five-hour testing sessions over a two-day period, inclusive of breaks.  This timing

6  strikes a sufficient balance between defendants' need for discovery and Newman's desire for

7  non-duplicative testing.  (JS at 12.)  However, as described during the hearing, in the event that

8  Newman's need for multiple breaks causes excessive interruptions to tests and/or prevents

9  completion of the testing, the court is amenable to ordering additional testing.  However, the

10  parties are encouraged to meet and confer regarding the need for additional testing and the

11  scheduling thereof.  As described in the hearing, if need be the parties shall contact the

12  undersigned's courtroom deputy and request a telephonic conference to discuss the potential need

13  for additional testing with the court prior to filing a formal discovery motion on the issue.

14

15  D.   The Presence Of A Third Party Observer or "Support Person" During The Clinical
       Interview Portion Of The Exam And/Or During The Testing Portion

16  Newman suggests that third party observers are permitted in situations of

17  "unusual, painful, or dangerous tests or procedures."  (JS at 16.)  Newman suggests testing may

18  be "psychologically painful" for her.  (Id.)  Newman declares that she will probably "freak out

19  and have a nervous breakdown" if she does not have "at least one support person" in the room

20  with her during the examination.  (Newman Decl., Dkt. No. 73 at 1.)

21  The District argues against a third party's presence during any portion of the

22  exam, and suggests that such presence would harm the integrity of the examination and testing

23  process.  (JS at 13-14.)  The District's argument is well-taken.

24  Courts have recognized that the presence of third parties during mental

25  examinations may be distracting and may alter the results of the testing.  Ragge, 165 F.R.D. at

26  609-10.  Indeed, "[t]hird party observers may, regardless of their good intentions, contaminate a

1   mental examination." Id. (denying third party observer where examiner did not propose to use

2   unorthodox or potentially harmful techniques in his exam.)

3           Newman admits that while testing may be "psychologically painful" for her "the

4   proposed psychological testing is not necessarily dangerous . . ." (JS at 16.)  Further, Newman

5   cites no decisions permitting a third party observer because testing had the potential to be

6   "psychologically painful" for the examinee.  (JS at 15-16 (citing Marsch v. Rensselaer County,

7   218 F.R.D. 367, 371 (N.D.N.Y. 2003) (court permitted a third party in a Rule 35 examination

8   where patient faced potential criminal prosecution based on responses to tests, and third party

9   was attorney advising him of Fifth Amendment rights); Romano v. II Morrow, Inc., 173 F.R.D.

10  271, 274 (D.Or. 1997) (court denied request for support person and found "that an observer,

11  court reporter, or recording device, would constitute a distraction during the examination and

12  work to diminish the accuracy of the process . . . .").)

13          For these reasons, and for the reasons stated on the record during the hearing, the

14  court orders that Newman may not have a third party "support person" accompanying her in the

15  exam room during any portion of her exam.  However, Newman may have a "support person"

16  nearby during the exam and may visit with that person on breaks as needed.  The "support

17  person" may not accompany Newman into the examination room during any part of the exam.

18  This compromise preserves the integrity of the mental examination process under the authorities

19  described above, while permitting Newman the security of knowing she has a "support person"

20  nearby.[8]

21  ////

22  ////

23  ////

24

---

25  [8]  This compromise is particularly appropriate given that as a student in the District,
    Newman alleges she attended classes in one classroom while her husband sat in a different

26  classroom in the same building, such that she was able to visit him to receive support if she felt it
    necessary.  (Third Am. Compl. ¶ 11-13.)

1        E.    The Recording Of The Clinical Interview Portion Of the Exam And/Or The
2                 Testing Portion

3        Newman admits that under the "normal procedure" there is no video camera or

4    other recording device at Rule 35 mental exams. (JS at 21 (citing Morrison v. Stephenson,

5    244 F.R.D. 405, 406 (S.D. Ohio 2007) and other cases.) However, Newman argues that the court

6    should exercise its discretion to order videotaping of some or all of her exam to ensure

7    Newman's "peace of mind" and provide a "reference for the fact finder," such that jurors would

8    not have to take Dr. Perrillo's word for what occurred during the examination. (JS at 20-21.)

9        The District counters by emphasizing that the presence of a recording device may

10   damage the integrity of the exam, and further, that videotaping the exam would violate

11   Dr. Perrillo's ethical and professional duties. (JS at 22.) The District's argument is well-taken.[9]

12       In the same way third party observation of mental exams is disfavored, the

13   presence of recording devices during such exams is also disfavored. E.g., Holland v. U.S.,

14   182 F.R.D. 493, 496 (D.S.C. 1998) (prohibiting videographer and noting that "the majority of

15   federal courts have rejected the notion that a third party should be allowed, even indirectly

16   through a recording device, to observe a Rule 35 examination" and noting that "[c]learly, the

17   presence of a videographer could influence Mr. Holland, even unconsciously, to exaggerate or

18   diminish his reactions to Dr. Westerkam's physical examination. Mr. Holland could perceive the

19   videotape as critical to his case and fail to respond in a forthright manner. In addition, the

20   videotape would give Plaintiffs an evidentiary tool unavailable to Defendant, who has not been

21   privy to physical examinations made of Mr. Holland by either his treating physicians or any

22   experts he may have retained. Such a result undermines the purpose of Rule 35"); Romano,

23   

24         [9] Dr. Perrillo declared that he would not administer the exam if the court required
     videotaping. (JS at 22.) In its papers and during the hearing, the District argued that because of
25   Dr. Perrillo's extreme position on the matter, an order directing videotaping was tantamount to
     an order proscribing the mental exam entirely. The court did not consider this argument in
26   reaching its decision. (Id.)

173 F.R.D. 271 (D.Or. 1997) (an "observer, court reporter, or recording device, would constitute a distraction during the examination and work to diminish the accuracy of the [physical examination] process"); Ragge, 165 F.R.D. at 609-10 (third party observers are typically prohibited); Tomlin v. Holecek, 150 F.R.D. 628, 631-32 (D. Minn. 1993) (holding that the presence of a third party during the examination under Rule 35 "would lend a degree of artificiality to the interview technique which would be inconsistent with applicable professional standards").

While courts permit recording in certain circumstances, those circumstances are not present here.  (See e.g., T.B. ex rel. G.B. v. Chico Unified School Dist., No. CIV S-07-0926-GEB-CMK, 2009 WL 837468 (E.D. Cal. March 26, 2009) (unpublished) (court permitted recording of autistic child's exam because child could not fully express himself in words and examiner requested recording; also, the ethical dilemma of secret recording was avoided because the child's mother could consent to the recording on his behalf and recording could thus be kept secret during exam and avoid tainting exam); (Di Bari v. Incaica Cia Armadora, S.A., 126 F.R.D. 12 (E.D.N.Y. 1989) (ordering court reporter to transcribe the exam because of examinee's limited English proficiency).  Newman has not alleged an inability to express herself with words or suggested a limited understanding of English, nor has she stated similar circumstances that would warrant recording her exam.[10]

For these reasons, and for the reasons stated on the record during the hearing, the court orders that Newman's mental exam may not be videotaped.  However, during the hearing, counsel for Newman urged that in the absence of videotaping, the clinical interview portion of the exam be audiotaped, as required by California procedural law governing mental examinations.  Cal. Civ. Proc. § 2032.530(a) ("the examiner and examinee shall have the right to

_____

[10]   While Newman argues that a recording of the exam would avoid pitting "plaintiff Newman with her known psychological defects versus [a] Neuropsychologist on the stand," Newman's desire to have a recording to rebut or potentially impeach Dr. Perrillo is not a valid reason for ordering recording of the exam.  (JS at 22.)

1  record a mental examination by audio technology").  This is a federal action subject to the

2  Federal Rules of Civil Procedure, not a state action subject to California's procedural rules.  See

3  e.g., Carpenter v. Superior Court, 141 Cal. App. 4th 249, 263 (2006) (distinguishing between

4  federal and state procedural requirements in the context of mental examinations and clarifying

5  that "FRCP rule 35(a) does not require what is required by section 2032.320 . . . .")

6  Here, as described above, the issue of Newman's mental examination is governed by Rule 35.

7  Newman cited no authorities suggesting that this court should be bound by California's

8  procedural rule governing mental examinations.  However, during the hearing counsel for the

9  District indicated a reluctant willingness to permit only the clinical interview portion of the exam

10  to be recorded via audiotape, on grounds that the clinical interview portion of the exam does not

11  have the same sensitivity as the testing portion of the exam.[11]  The court will therefore permit the

12  audiotaping of the clinical interview portion of the exam only.

13        F.        Newman's Request For Judicial Notice

14              In connection with the pending motion, Newman filed a Request for Judicial

15  Notice ("RJN") asking that the court take notice of the Third Amended Complaint and the

16  parties' "Stipulation re: Physical Examination of Shirley A. Newman."  (RJN, Dkt. No. 76).  The

17  RJN is denied.

18              Facts subject to judicial notice are those which are either "(1) generally known

19  within the territorial jurisdiction of the trial court or (2) capable of accurate and ready

20  determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R.

21  Evid. 201(b).  The party requesting judicial notice bears the burden of persuading the court that

22  the particular fact is not reasonably subject to dispute and is capable of immediate and accurate

23  determination by resort to a source "whose accuracy cannot reasonably be questioned."  In re

24
25        [11]  Of note, during the hearing counsel for the District also indicated that the clinical
    portion of the exam would be "provisionally" audiotaped pending a ruling from the court.  This
    willingness to audiotape the proceeding, even provisionally, belies any argument that such tape
26  recording would infect the integrity of the exam.

1    Tyrone F. Conner Corp., Inc., 140 B.R. 771, 781 (E.D. Cal. 1992).  A court may not take judicial

2    notice of a matter that is in dispute.  Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir.

3    2001) (impliedly overruled on other grounds as discussed in Gallardo v. Dicarlo, 203 F.Supp.2d

4    1160, 1162 n. 2 (C.D.Cal.2002) (addressing heightened pleading standards in cases involving

5    individual government officials).)

6              As to the parties' stipulation about Newman's physical exam, as indicated by the

7    authorities above, such stipulations are not generally the sorts of documents that are judicially

8    noticeable.  Moreover, Newman has not stated any legal or factual bases suggesting this

9    particular stipulation should be judicially noticed.   Therefore, the RJN is denied as to the parties'

10   "Stipulation re: Physical Examination of Shirley A. Newman."

11             As to the Third Amended Complaint, while the Court may take judicial notice of

12   its own records, including pleadings, a party requesting judicial notice bears the burden of

13   persuading the trial judge that the fact is a proper matter for judicial notice.  In re Tyrone F.

14   Conner Corp., Inc., 140 B.R. at 781-82 (judicially noticing documents in the court's file does not

15   include noticing the truth of the facts asserted in each document).  Newman has not met this

16   burden.  Newman's RJN does not state any authorities or factual bases for judicially noticing the

17   Third Amended complaint.  The joint statement cites to the RJN to substantiate propositions that,

18   for instance, Newman "wore a special bracelet to help identify her as special medical and

19   psychological needs." (JS at 4 (citing RJN).)  The court cannot take judicial notice of alleged

20   (and potentially disputed) facts like this one.  Similarly, the joint statement cites to the RJN to

21   substantiate the statement that "Plaintiff Newman does not allege or claim any organic or

22   physical brain injury resulting from the event." (JS at 5 (citing RJN).)  The court cannot take

23   judicial notice of disputed facts, including whether Newman's alleged damages are pleaded

24   broadly enough to be read as encompassing "physical" brain injury.  Therefore, while the Third

25   ////

26   ////

17

1   Amended Complaint is a document that may subject to judicial notice, given Newman's

2   suggested purposes for taking such notice, the RJN is denied.[12]

3   III.   <u>CONCLUSION</u>

4          For the foregoing reasons, IT IS HEREBY ORDERED that:

5          1.  The District's motion is granted;

6          2.  On February 8 and 9, 2011,[13] or on other days agreeable to the parties' counsel,

7   Newman shall attend and undergo a mental examinations consistent with the parameters set forth

8   above and during the hearing on the matter, specifically that:

9                  a.   Dr. Perrillo is qualified to conduct the clinical interview and testing

10                    portions of Newman's mental exam;

11                 b.   The court will not prohibit Dr. Perrillo from administering specific

12                    tests from his proposed list of 26 tests (Prop'd Order, Dkt. No. 53-

13                    3, Exh. 3 at 2-3);

14                 c.   The exam will occur over two five-hour sessions in a two-day

15                    period, inclusive of breaks, but the court will be amenable to

16                    ordering additional testing should there be excessive breaks or

17                    breaks invalidating in-progress tests;

18                 d.   There will be no "support person" permitted in the examination

19                    room with Newman for any portion of the examination, however, a

20                    "support person" may be in the vicinity and available to Newman

21                    during breaks;

22                 e.   No portion of the examination will be recorded via videotape;

23

24  [12]  The court has cited to allegations within the Third Amended Complaint within this order where necessary to provide context for the parties' discovery dispute, but the court declines to take judicial notice of the truth of any alleged fact or the scope of Newman's alleged damages.

25

26  [13]  This order does not limit the parties' ability to agree to a different location or starting time.

1      f.     The clinical examination portion of the examination may be

2             recorded via audiotape.

3             3.  In conducting the examinations, Dr. Perrillo shall in all respects exercise his

4      professional judgment consistent with his professional and ethical obligations, including

5      whenever practical or appropriate limiting inquiries into Newman's psychological and mental

6      condition before and after the acts alleged in the Third Amended Complaint to those inquiries

7      necessary to elicit responses that have a bearing on the matters at issue in this litigation;

8             8.  Newman's Request for Judicial Notice is denied.

9             IT IS SO ORDERED.

10     DATED:  February 14, 2011

11

12                                              _____

13                                              KENDALL J. NEWMAN
                                                UNITED STATES MAGISTRATE JUDGE

14     KJN:mso

15

16

17

18

19

20

21

22

23

24

25

26