UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

SHIRLEY NEWMAN and ANTHONY
BUTLER,

       Plaintiffs,

    v.

SAN JOAQUIN DELTA COMMUNITY
COLLEGE DISTRICT; DANIELE
RULEY; JAMES WOOD; and DOES 1
through 100, inclusive,

       Defendants.

_____/

NO. CIV. 2:09-3441 WBS KJN

MEMORANDUM AND ORDER RE:
MOTION FOR SUMMARY JUDGMENT,
SUMMARY ADJUDICATION, OR
PARTIAL SUMMARY JUDGMENT AND
MOTION IN LIMINE

----oo0oo----

       Plaintiffs Shirley Newman and Anthony Butler brought

this action against defendants San Joaquin Delta Community

College District ("Delta College"), Daniele Ruley, and James

Wood, asserting claims for excessive force, unreasonable seizure,

and disability discrimination under federal and state law.

Presently before the court are Delta College and Ruley's joint

motion for summary judgment or partial summary judgment pursuant

to Federal Rule of Civil Procedure 56, Wood's motion for summary

1

1  judgment or summary adjudication pursuant to Rule 56, and
2  plaintiffs' motion in limine.

3  I.   Factual and Procedural Background

4        On March 13, 2008, plaintiffs, who have lived together
5  since 2000, were attending classes in separate classrooms at
6  Delta College when Newman began to suffer from anxiety.  Newman,
7  a 43-year-old woman with a history of mental illness, sought out
8  Butler to comfort her.[1]  An instructor in Butler's classroom
9  called campus police when Newman stated at one point that she was
10 going to hurt someone.   (See Meleyco Decl. Ex. J (classroom
11 instructor deposition transcript), at 11-22, Ex. U (police
12 dispatcher deposition transcript), at 21-23.)  The dispatcher
13 told the police officers that the wife was upset and crying and
14 on the "verge of being violent towards her husband." (Medina
15 Decl. Ex. 20, at Ex. 2.)

16       According to plaintiffs, they were walking quietly and
17 calmly to the classroom door as they held each other when the
18 individual defendants arrived.  (See Meleyco Decl. Ex. E (Butler
19 deposition transcripts), at Feb. 27, 2009, dep. tr. 91-92, Ex. J,
20 at 23-24.)  Butler complied with Delta College police officer
21 Wood's orders to come with him, but was slammed to the ground and
22 dragged into the hallway by Woods and Delta College police
23 officer Ruley.  Newman states that Ruley then pulled her through
24 the classroom door and slammed her against the hallway wall three

25 _____

26       [1]    Before this incident, San Joaquin In Home Support
   Services had granted Newman twenty-four-hour "protective
27 supervision" by Butler.  Butler states that he enrolled in
   classes to be near Newman when Delta College would not allow him
28 to sit inside or outside Newman's classrooms.  (Butler Decl. in
   Opp'n to Delta College & Ruley's Mot. ("Butler Decl. I") ¶ 4.)

times, while using racially derogatory language.  Plaintiffs were
released after five to ten minutes.  (See id. Ex. E, at Feb. 27,
2009, dep. tr. 94-104, Apr. 5, 2011, dep. tr. 196-210, 223, 250,
Aug. 12, 2009, dep. tr. 94-101; id. Ex. R (Newman deposition
transcripts), at Apr. 12, 2009, dep. tr. 191-200, 244-57, Apr.
20, 2009, dep. tr. 384-386; Butler Decl. in Opp'n to Delta
College & Ruley's Mot. ("Butler Decl. I") ¶¶ 16, 23-25, Exs. E-F
(Online Citizen Complaint Forms); Newman Decl. in Opp'n to Delta
College & Ruley's Mot. ("Newman Decl. I") ¶¶ 4-8, 19, 32-38, Exs.
E-F (Online Citizen Complaint Forms); Butler Decl. in Opp'n to
Wood's Mot. ("Butler Decl. II") ¶¶ 6-10; Newman Decl. in Opp'n to
Wood's Mot. ("Newman Decl. II") ¶¶ 6-17; see also Meleyco Decl.
Ex. BB (deposition transcript of witness to incident), at 11-12;
id. Ex. B (deposition transcript of witness to incident), at
14-33, 52-55.)

     According to defendants, plaintiffs were disturbing the
other students and Butler failed to comply with Wood's orders and
appeared to be dragging Newman to the classroom door as she
pushed away from him.  Newman, screaming and crying, then tried
to get to Butler while Wood was questioning him in the hallway.

     On March 14, 2008, after meeting with Newman, a vice
president at Delta College temporarily suspended her for student
misconduct.  The vice president required Newman to submit
documentation that supported her claim that she was receiving
mental help.  (See Michel Decl. ¶¶ 4-5, Ex. A-B.)  Newman did not
submit sufficient documentation and was notified on March 17,
2008, that she was suspended through the summer 2008 semester.
Following numerous appeals, the president of Delta College

3

1   rescinded the suspension later that summer.

2          Delta College's Disabled Students Program and Services

3   ("DSPS") office now permits Newman to have Butler attend classes

4   with her.   The DSPS office had previously accommodated Newman

5   with extended test-taking time and allowed her to use the

6   elevators.

7          Defendants removed the case to this court on December

8   11, 2009.   Plaintiffs assert a 42 U.S.C. § 1983 claim for

9   excessive force and unreasonable seizure as well as state law

10  claims for battery, false imprisonment, intentional infliction of

11  emotional distress, and negligent infliction of emotional

12  distress against all defendants.   Newman also asserts claims for

13  violations of the Americans with Disabilities Act ("ADA"), 42

14  U.S.C. §§ 12101-12183, section 504 of the Rehabilitation Act, 29

15  U.S.C. § 794, California's Unruh Civil Rights Act ("Unruh Act"),

16  see Cal. Civil Code § 51, California's Disabled Persons Act

17  ("DPA"), see id. § 54.1, and California Government Code section

18  11135 against Delta College.   See Cal. Gov't Code § 11135.

19  II.  Discussion

20         Summary judgment is proper "if the movant shows that

21  there is no genuine dispute as to any material fact and the

22  movant is entitled to judgment as a matter of law."   Fed. R. Civ.

23  P. 56(a).   A material fact is one that could affect the outcome

24  of the suit, and a genuine issue is one that could permit a

25  reasonable jury to enter a verdict in the non-moving party's

26  favor.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

27  (1986).   The party moving for summary judgment bears the initial

28  burden of establishing the absence of a genuine issue of material

4

1  fact and can satisfy this burden by presenting evidence that

2  negates an essential element of the non-moving party's case.

3  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

4  Alternatively, the moving party can demonstrate that the

5  non-moving party cannot produce evidence to support an essential

6  element upon which it will bear the burden of proof at trial.

7  Id.

8          Once the moving party meets its initial burden, the

9  burden shifts to the non-moving party to "designate 'specific

10 facts showing that there is a genuine issue for trial.'"  Id. at

11 324 (quoting then-Fed. R. Civ. P. 56(e)).  To carry this burden,

12 the non-moving party must "do more than simply show that there is

13 some metaphysical doubt as to the material facts."  Matsushita

14 Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

15 "The mere existence of a scintilla of evidence . . . will be

16 insufficient; there must be evidence on which the jury could

17 reasonably find for the [non-moving party]."  Anderson, 477 U.S.

18 at 252.

19         In deciding a summary judgment motion, the court must

20 view the evidence in the light most favorable to the non-moving

21 party and draw all justifiable inferences in its favor.  Id. at

22 255.  "Credibility determinations, the weighing of the evidence,

23 and the drawing of legitimate inferences from the facts are jury

24 functions, not those of a judge . . . ruling on a motion for

25 summary judgment . . . ."[2]  Id.

26

27         [2]  Plaintiffs request judicial notice, see Fed. R. Evid.
   201, of eleven documents.  (Pls.' Req. for Judicial Notice Exs.
28 A-K.)  The court declines to take judicial notice of these

1          A.   <u>Evidentiary Objections</u>

2          Pursuant to Federal Rule of Civil Procedure 56(c)(2),

3    "[a] party may object that the material cited to support or

4    dispute a fact cannot be presented in a <u>form that would be</u>

5    <u>admissible in evidence</u>."   Fed. R. Civ. P. 56(c)(2) (emphasis

6    added).

7          The parties have filed numerous evidentiary objections,

8    many of which are particularly improper on summary judgment.   <u>See</u>

9    <u>Burch v. Regents of Univ. of Cal.</u>, 433 F. Supp. 2d 1110, 1119-20

10   (E.D. Cal. 2006) (Shubb, J.).   Objections to evidence on the

11   ground that the evidence is irrelevant, speculative,

12   argumentative, or constitutes an improper legal conclusion are

13   all duplicative of the summary judgment standard itself.   All of

14   these objections are overruled as moot.

15         Delta College and Ruley object to many of the exhibits

16   attached to plaintiffs' counsel's declaration: (1) deposition

17   transcripts and exhibits, (2) expert reports and CVs, and (3)

18   documents produced by Delta College, such as (a) e-mails among

19   Delta College police officers after the incident, (b) the

20   internal affairs investigation report and related documents, and

21   (c) documents pertaining to the tasering of a mentally ill

22

23   documents because judicial notice is not necessary to resolve the
     motions.

24         Wood requests judicial notice of four documents, only
25   three of which he attached to the request.  (Wood's Req. for
     Judicial Notice Exs. 1, 3-4.)  The court declines to judicially
26   notice the decision from the California Department of Health
     Services because it is not necessary to the resolution of the
27   motions.  The court denies the request to judicially notice the
     publications from the California Commission on Peace Officer
28   Standards and Training ("POST") because they are incomplete
     copies of the publications.

student.  (<u>See</u> Delta College & Ruley's Objections to Meleyco
Decl.)  The court overrules the objections to these exhibits
because plaintiffs may be able to present this evidence at trial
in a form that would be admissible.  <u>See</u> Fed. R. Civ. P.
56(c)(2).  The court also overrules Delta College and Ruley's
objections to statements in plaintiffs' counsel's declaration.

        The court overrules Delta College and Ruley's
objections contained within their response to plaintiffs'
statement of undisputed facts.  (<u>See</u> Delta College & Ruley's
Objections to Pls.' Evidence in Supp. of their Opp'n to Defs.'
Mot. for Summ. J. or Partial Summ. J.)

        The court overrules plaintiffs' objections to Wood's
declaration, (<u>see</u> Pls.' Opp'n to Wood Decl. Submitted in Supp. of
Wood's Mot. for Summ. J./Adjudication), and plaintiffs'
objections contained within their response to Wood's statement of
undisputed facts, (<u>see</u> Pls.' Statement of Disputed & Undisputed
Material Facts in Opp'n to Wood's Mot. for Summ. J. or Partial
Summ. J.), except for 11, which objects on the ground that the
diagnosis of Newman in the cited evidence was not made by a
qualified expert.  The court sustains this objection.  The court
overrules plaintiffs' objections contained in their response to
Delta College and Ruley's statement of undisputed facts, (Pls.'
Statement of Disputed & Undisputed Material Facts in Opp'n to
Delta College & Ruley's Mot. for Summ. J. or Partial Summ. J.),
except for 25.  The court sustains objection 25 to the transcript
of the classroom instructor's call to police.  The parties
dispute its authenticity.

        B.    <u>Plaintiffs' § 1983 Claim</u>

7

In relevant part, § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  While § 1983 is not itself a source of substantive rights, it provides a cause of action against any person who, under color of state law, deprives an individual of federal constitutional rights or limited federal statutory rights.  42 U.S.C. § 1983; Graham v. Connor, 490 U.S. 386, 393-94 (1989).

      1.   Individual Defendants

        a.   Excessive Force

Under the Fourth Amendment, police may use only such force during an arrest as is objectively reasonable under the circumstances, as judged by a reasonable officer at the scene. Graham, 490 U.S. at 396-97.  Excessive force claims require "balanc[ing] the amount of force applied against the need for that force." Bryan v. MacPherson, 630 F.3d 805, 823-24 (9th Cir. 2010) (quoting Meredith v. Erath, 342 F.3d 1057, 1061 (9th Cir. 2003)) (internal quotation marks omitted).  Summary judgment should be granted sparingly on excessive force claims.  See Gregory v. Cnty. of Maui, 523 F.3d 1103, 1106 (9th Cir. 2008).

In considering the need for the force, the court considers three non-exclusive factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively

resisting arrest or attempting to evade arrest by flight."
_Bryan_, 630 F.3d at 826 (quoting _Graham_, 490 U.S. at 396)
(internal quotation marks omitted).  The safety factor is the
most important factor.  _Id._

Here, on March, 13, 2008, when Newman began suffering
from anxiety, she sought out Butler, who was in a classroom down
the hall.  Butler attempted to comfort Newman.  The classroom
instructor then brought them into a side office.  In the office,
Newman rummaged through the items on the desk and stated that she
was going to hurt someone.  The classroom instructor then called
Delta College police.

Wood and Ruley received a call about a husband and wife
disturbing the peace.  The dispatcher said the wife was upset and
crying and on the "verge of being violent towards her husband."
(Medina Decl. Ex. 20, at Ex. 2.)

According to plaintiffs, plaintiffs then walked calmly
and quietly through the classroom as other students were working,
stopping briefly to grab Butler's backpack.  Butler was holding
Newman in a "hugging position"; Newman was crying quietly and
clinging to Butler's shirt.

Before plaintiffs were able to exit the classroom, the
individual defendants arrived on the scene.  Newman then got
behind Butler, still in physical contact with him.  Butler
requested some space from the individual defendants.  Wood
ordered Butler to come with him.  Butler stated, "Okay.  But my
wife is very, very ill.  We have to kind of go slow," (Meleyco
Ex. E, at Feb. 27, 2009, dep. tr. 94:19-20), and then took a step
toward Wood.  Wood then repeated his order in a more commanding

tone and grabbed Butler's arm.  Wood then "[s]lammed," (id. Ex.
E, at Apr. 5, 2011, dep. tr. 205:19), Butler to the ground with
the assistance of Ruley, who pulled Butler's shirt over his head.
Ruley also pushed Newman away from Butler as Newman tried to hold
on to him.  The individual defendants then dragged Butler, who
was lying face-down, approximately seven feet through the
classroom door and down the hallway, at which point Wood stood
Butler upright.

Ruley then returned to the classroom to find Newman,
who had remained in the same spot.  Ruley grabbed Newman's arm or
wrist and forcefully pulled her through the classroom door,
allegedly injuring Newman's shoulder.  Ruley then continued to
pull Newman down the hallway, in the opposite direction of Wood
and Butler.  Grabbing Newman at the shoulders, Ruley slammed
Newman against the hallway wall three times, allegedly causing
injury to her lower back that later required surgery.[3]  Ruley
told Newman multiple times to "[s]hut your black ass up," (id.
Ex. R, Apr. 12, 2011, dep. tr. 196:17-18), and called her a
"[b]itch." (Id. Ex. B, at 23:24.)  Newman claims that she never
attempted to get away from or resist Ruley.

Butler explained to Wood that his wife was mentally ill
and what had happened.  A professor and a student who knew Newman
attempted to explain Newman's circumstances to Ruley.  (See
Meleyco Decl. Exs. O, B.)  Plaintiffs were detained for five to

---

[3]     Following the surgery, Newman has had difficulty
walking and generally uses a wheelchair.  She also has had
difficulty controlling her bowel and bladder functions and has
had numbness in her genital area.

10

1   ten minutes before being released.[4]

2          Under plaintiffs' version of the facts, the government

3   interest in the use of force was minimal.  See Bryan, 630 F.3d at

4   826.  The only possibly applicable crimes were the misdemeanors

5   of failing to comply with an order, resisting arrest, disturbing

6   the peace, or battery.  "While 'the commission of a misdemeanor

7   offense is not to be taken lightly, it militates against finding

8   the force used to effect an arrest reasonable where the suspect

9   was also nonviolent and posed no threat to the safety of the

10  officers or others.'"  Id. at 828-29 (quoting Headwaters Forest

11  Def. v. Cnty. of Humboldt, 240 F.3d 1185, 1204 (9th Cir. 2000),

12  vacated and remanded on other grounds sub nom. Cnty. of Humboldt

13  v. Headwaters Forest Def., 534 U.S. 801 (2001)).  Plaintiffs'

14  evidence suggests that they did not pose a threat to the officers

15  and did not resist or attempt to flee before or after the

16  individual defendants began to use force.  Moreover, if the

17  individual defendants knew that Newman was "acting out" from a

18  mental illness, the Ninth Circuit has indicated that less

19

20

21

22

23     [4]     Defendants' version of the events differ.  It appeared
       that Newman was pushing away from Butler as Butler dragged her
24     toward the exit.  She also was screaming and crying when she went
       behind Butler when the officers arrived.  When Wood was
25     questioning Butler in the hallway, Newman was trying to get to
       Butler.

26            The parties' facts overlap in some respects.  It
       appears undisputed that Butler was still holding Newman when Wood
27     first pulled his arm.  It also appears undisputed that after
       Ruley pulled Newman into the hallway, Newman was crying and
28     screaming for Butler.

                                   11

intrusive means may be more appropriate.[5]  See id. at 829

(discussing use of intermediate force).

While the force used was not deadly or intermediate, it

involved slamming Butler to the ground and dragging him and

pulling Newman and slamming her against the wall three times.

Under plaintiffs' version of the events, there is a genuine

dispute regarding the reasonableness of the force under the

balancing test set forth in Graham.

Section 1983 requires "personal participation." Jones

v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  While Wood did

not touch Newman, Wood initiated the use of force against Butler

and a jury could reasonably infer that he participated in the

subsequent use of force against Newman.  Accordingly, the court

will deny the individual defendants' motions for summary judgment

on the § 1983 claim for excessive force.

b.   Unreasonable Seizure

An investigatory stop under Terry v. Ohio, 392 U.S. 1

(1968), only requires reasonable suspicion; an arrest requires

probable cause.  See Washington v. Lambert, 98 F.3d 1181, 1885-86

(9th Cir. 1996).

To determine whether a seizure was a Terry stop or an

arrest, the "general consideration" is that a Terry stop is brief

and of a minimally intrusive nature.  United States v.

---

[5]      The individual defendants may have known that Newman
was mentally ill from how Newman was acting.  Moreover, Newman
was wearing a "medic-alert" bracelet and Butler informed the
individual defendants that his wife was ill.  Plaintiffs have
also presented evidence suggesting that Ruley may have learned
about Newman's mental illness before March 13, 2008, when she
responded to a call involving Newman.

1  Guzman-Padilla, 573 F.3d 865, 884 (9th Cir. 2009).  Beyond this
2  general consideration, the courts usually use two inquiries to
3  determine whether a seizure was a Terry stop or arrest.  Id.
4  "First, it is well-established that intrusive measures may
5  convert a stop into an arrest if the measures would cause a
6  reasonable person to feel that he or she will not be free to
7  leave after brief questioning--i.e., that indefinite custodial
8  detention is inevitable."  Id.  "Second, because '[t]he purpose
9  of a Terry stop is to allow the officer to pursue his
10 investigation without fear of violence,' 'we allow intrusive and
11 aggressive police conduct without deeming it an arrest . . . when
12 it is a reasonable response to legitimate safety concerns on the
13 part of the investigating officers.'"  Id. (quoting United States
14 v. Taylor, 716 F.2d 701, 708 (9th Cir. 1983), and United States
15 v. Miles, 247 F.3d 1009, 1012-13 (9th Cir. 2001)) (alterations in
16 original) (citation omitted).

17        Here, a trier of fact could find that the Terry stop
18 transformed into an arrest.  As the facts are shown by
19 plaintiffs, nothing had occurred that would make the officers
20 fear for their safety, justifying aggressive conduct.  See
21 Guzman-Padilla, 573 F.3d at 883; see, e.g., United States v.
22 Ricardo D., 912 F.2d 337, 340 (9th Cir. 1990).

23        "Probable cause to arrest exists when officers have
24 knowledge or reasonably trustworthy information sufficient to
25 lead a person of reasonable caution to believe that an offense
26 has been or is being committed by the person being arrested."
27 United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007).

28        Under plaintiffs' version of the events, the only fact

1  supporting probable cause would have been the information the

2  individual defendants received from the student dispatcher.

3  However, once they arrived on the scene, the individual

4  defendants would have seen that plaintiffs were calmly and

5  quietly walking toward the classroom exit.  According to

6  plaintiffs, Butler complied with Wood's orders.  There is a

7  genuine dispute with respect to whether probable cause existed to

8  arrest either plaintiff for any crime.  Accordingly, the court

9  will deny the individual defendants' motions for summary judgment

10 on the unreasonable seizure claim.

11                    c.   Qualified Immunity

12          A court may not determine qualified immunity at the

13 summary judgment stage when there is a factual dispute as to "the

14 facts and circumstances within an officer's knowledge" or "what

15 the officer and claimant did or failed to do."  Up!/Portland v.

16 Bagley, 988 F.2d 868, 873 (9th Cir. 1993); see Wilkins v. City of

17 Oakland, 350 F.3d 949, 956 (9th Cir. 2003); see, e.g., Castillo

18 v. City of Oakland, No. C 09-4679, 2010 WL 4316176, at *3 (N.D.

19 Cal. Oct. 26, 2010);  Begzad v. City of Hayward, No. C03-2163,

20 2005 WL 350961, * 7 (N.D. Cal. Feb. 14, 2005).  Here, there are

21 multiple factual disputes regarding what the individual

22 defendants and plaintiffs did or failed to do and what the

23 individual defendants knew, thus precluding the court from

24 determining the issue of qualified immunity.

25          2.   Monell Claim

26          "In a Monell claim, there are three ways to show a

27 policy or custom of a [public entity]: (1) by showing 'a

28 longstanding practice or custom which constitutes the 'standard

operating procedure' of the local government entity'; (2) 'by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision'; or (3) 'by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.'"  <u>Rosenbaum v. City & Cnty. of San Francisco</u>, 484 F.3d 1142, 1155 (9th Cir. 2007). A policy is a deliberate choice made by the entity and can be one of action or inaction.  <u>See</u> <u>Long v. Cnty. of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006).

While not exactly clear from their opposition, plaintiffs appear to base their <u>Monell</u> claim on Delta College's police policy or custom regarding handling mentally ill people, including the use of force.  Plaintiffs appear to only rely on a failure-to-train theory under <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989), and ratification.

"To impose liability . . . under <u>Canton</u>, a plaintiff must show: (1) that [defendant's] employee violated [the plaintiff]'s rights; (2) that the [defendant] has customs or policies that amount to deliberate indifference (as that phrase is defined by <u>Canton</u>); and (3) that these policies were the moving force behind the employee's violation of [the plaintiff]'s constitutional rights, in the sense that the [the defendant] could have prevented the violation with an appropriate policy." <u>Gibson v. Cnty. of Washoe, Nev.</u>, 290 F.3d 1175, 1194 (9th Cir. 2002).

The deliberate indifference standard is met when "the

15

1  need for more or different training is <u>so obvious</u>, and the

2  inadequacy <u>so likely</u> to result in the violation of constitutional

3  rights, that the policymakers of the [entity] can reasonably be

4  said to have been deliberately indifferent to the need." <u>Canton</u>,

5  489 U.S. at 390 (emphases added).  "A plaintiff [] might succeed

6  in proving a failure-to-train claim without showing a pattern of

7  constitutional violations where 'a violation of federal rights

8  may be a highly predictable consequence of a failure to equip law

9  enforcement officers with specific tools to handle recurring

10 situations.'" <u>Long</u>, 442 F.3d at 1186 (quoting <u>Bd. of Cnty.</u>

11 <u>Comm'rs v. Brown</u>, 520 U.S. 397, 409 (1997)).

12        Here, one of plaintiffs' police experts, Joseph

13 McNamara, makes the general observation about how frequently

14 police officers encounter mentally ill people and opines that

15 police officers should be trained on how to handle them.

16 (Meleyco Decl. Ex. UU (McNamara expert report).  Plaintiffs point

17 to the fact that the Marc Bromme, who was chief of police at the

18 time of the incident, acknowledged that the approach used to deal

19 with mentally healthy people may not be effective with mentally

20 ill people. (<u>Id.</u> Ex. D (Bromme deposition transcript), at

21 142:12-18.)  Plaintiffs' expert McNamara states, for example,

22 that touching a mentally ill person may cause the person to

23 erupt, while having the opposite effect on a mentally healthy

24 person. (<u>Id.</u> Ex. UU.)

25        Plaintiffs point out that Delta College did not require

26 continuing education training of police officers or have a policy

27 in its police manual <u>specifically</u> addressing mentally ill people

28 before this incident and still does not.  (<u>Id.</u> Exs. D (Bromme

16

1   deposition transcript), at 47:13-20, DD (Zwickey deposition

2   transcript), at 116:2-9.)  The California Commission on Peace

3   Officer Standards and Training requires twenty-hours of

4   continuing education training, with some of these hours

5   discretionary on what topics a police department may cover.  (Id.

6   Ex. P (McNamara deposition transcript), at July 18, 2011, dep.

7   tr. 159:17-160:10.  McNamara recommends forty hours beyond the

8   required twenty-four hours of continuing education be devoted to

9   handling mentally ill people.  (Id.)

10          In support of their failure-to-train theory, plaintiffs

11  also point to four categories of post-incident evidence.  See

12  Henry v. Cnty. of Shasta, 132 F.3d 512, 519 (9th Cir. 1997),

13  amended on denial of rehearing, 132 F.3d 512 (9th Cir. 1998)

14  ("[P]ost-event evidence is not only admissible for purposes of

15  proving the existence of a municipal defendant's policy or

16  custom, but is highly probative with respect to that inquiry.").

17  First, neither the police chief at the time nor the next police

18  chief took corrective action.  With respect to Newman

19  specifically, an e-mail from the chief of police told his

20  officers that Newman had a mental illness, but did not instruct

21  them to handle her differently from mentally healthy people.

22  (Meleyco Decl. Ex. GG (e-mails).)  Second, a series of e-mails

23  among Delta College officials, including police officers,

24  suggests that they pre-judged what had occurred.  (Id.)

25          Third, the internal affairs investigation, conducted by

26  a police officer who may have pre-judged the incident,

27  "exonerated" the individual defendants.  (Id. Ex. JJ (internal

28  affairs report).)  The chief of police reviewed the report and

1  agreed with it in letters to plaintiffs. (<u>See</u> Butler Decl. II

2  Exs. G-H.  Fourth, in April of 2011, three years after the

3  incident, Delta College police tasered a mentally ill person.

4  (Meleyco Decl. Ex. II.)

5          In response to the failure-to-train theory, Delta

6  College argues that plaintiffs have not presented evidence that

7  contact with mentally ill people was a recurring situation.

8  Delta College police officers, including the individual

9  defendants, received all legislatively-mandated training, such as

10 basic and field training.  (<u>See</u> Ruley Decl. ¶¶ 2-12; Wood Decl.

11 in Supp. of Delta College & Ruley's Mot. ¶¶ 2-9; Di Piero Decl.

12 ¶¶ 2-10; Greenwood Decl. ¶¶ 2-10; Vasquez Decl. ¶¶ 2-8.)  Basic

13 and field training includes training on how to handle mentally

14 ill people.

15         Delta College argues that plaintiffs do not have

16 sufficient evidence of deliberate indifference, noting that

17 plaintiffs do not cite past constitutional violations.

18         The court finds that plaintiffs' evidence to prove its

19 failure-to-train theory is relatively weak and relies on general

20 observations about the frequency with which police officers

21 encounter mentally ill people.  Moreover, plaintiffs have not

22 argued that the basic and field training with respect to mentally

23 ill people is insufficient as a matter of content; plaintiffs

24 simply argue for more training and a policy in the manual.

25 Additionally, their post-incident evidence is far from as

26 probative as the evidence was in <u>Henry</u>.

27         Nonetheless, drawing all inferences in plaintiffs'

28 favor, the court finds that the failure to have <u>any</u> continuing

education training on handling mentally ill people and the

failure to address the issue <u>at all</u> in the police manual creates

at least triable issues with respect to whether Delta College's

failure to train amounted to deliberate indifference and was the

"moving force" behind the constitutional violations.  <u>Cf.</u> <u>Abston</u>

<u>v. City of Merced</u>, No. 1:09-cv-00511, 2011 WL 2118517, at *15

(E.D. Cal. May 24, 2011) (Wanger, J.).  Plaintiffs have gone

beyond presenting evidence of the failure to train one officer,

which is insufficient standing alone.  <u>See</u> <u>Blankenhorn v. City of</u>

<u>Orange</u>, 485 F.3d 463, 484 (9th Cir. 2007).  Accordingly, the

court will deny Delta College's motion for summary judgment on

the <u>Monell</u> claim.[6]

    C.   <u>Plaintiffs' Battery Claim</u>

    "Claims that police officers used excessive force in

the course of an arrest, investigatory stop or other 'seizure' of

a free citizen are analyzed under the reasonableness standard of

the Fourth Amendment to the United States Constitution."  <u>Munoz</u>

<u>v. City of Union City</u>, 120 Cal. App. 4th 1077, 1102 (1st Dist.

2009); <u>see also</u> <u>Austin B. v. Escondido Union Sch. Dist.</u>, 149 Cal.

App. 4th 860, 879 (2007) (discussing joint tortfeasor liability).

Accordingly, because the court will deny defendants' motions for

summary judgment on the excessive force claim, the court will

deny defendants' motions with respect to this claim.[7]

---

    [6]   Because plaintiffs have a viable <u>Monell</u> claim under the
failure-to-train theory, the court declines to decide whether
plaintiffs have grounds for <u>Monell</u> liability under ratification.

    [7]   By statute, a public entity is vicariously liable for
injuries caused by their employees within the scope of
employment, unless the employee is immune from liability.  <u>See</u>
Cal. Gov't Code § 815.2.  Accordingly, Delta College will be

1          D.   Plaintiffs' False Imprisonment Claim

2          "The elements of a tortious claim of false imprisonment

3 are: (1) the nonconsensual, intentional confinement of a person,

4 (2) without lawful privilege, and (3) for an appreciable period

5 of time, however brief." Easton v. Sutter Coast Hosp., 80 Cal.

6 App. 4th 485, 496 (1st Dist. 2000); see also Harden v. S.F. Bay

7 Area Rapid Transit Dist., 215 Cal. App. 3d 7, 15 (1st Dist. 1989)

8 (discussing joint tortfeasor liability).  "Pursuant to California

9 Penal Code § 847(b)(1), a police officer shall not be held

10 civilly liable for false arrest . . . if the police officer had

11 reasonable cause to believe the arrest was lawful . . . ."

12 Turner v. Oakland Police Officers, No. C 09-03652, 2010 WL

13 234898, at *5 (N.D. Cal. Jan. 14, 2010).  "Reasonable cause to

14 arrest exists when the facts known to the arresting officer would

15 lead a reasonable person to have a strong suspicion of the

16 arrestee's guilt." Id.  For the reasons discussed with respect

17 to the unreasonable seizure claim, the court will deny

18 defendants' motions with respect to the false imprisonment claim.

19          E.   Plaintiffs' Intentional Infliction of Emotional

20               Distress Claim

21          The elements for the tort of intentional infliction of

22 emotional distress are "(1) extreme and outrageous conduct by the

23 defendant with the intention of causing, or reckless disregard of

24 the probability of causing, emotional distress; (2) the

25 plaintiff's suffering severe or extreme emotional distress; and

26 (3) actual and proximate causation of the emotional distress by

27 _____

28 liable to the extent the individual defendants are liable for the
state law torts.

1   the defendant's outrageous conduct." <u>Christensen v. Super. Ct.</u>,

2   54 Cal. 3d 868, 904 (1991) (quoting <u>Davidson v. City of</u>

3   <u>Westminister</u>, 32 Cal. 3d 197, 209 (1982)).   An unprovoked attack

4   by a police officer could be considered extreme and outrageous

5   conduct.   <u>See</u> <u>Graves v. City of Stockton</u>, No. Civ. 04-0430 DFL

6   KJM, 2006 WL 768831, at *5 (E.D. Cal. Mar. 27, 2006) (Levi, J.);

7   <u>Lewis v. City of Portland</u>, No. Civ. 99-1279-AS, 2000 WL 254004,

8   at *3 (D. Or. Jan.21, 2000).   Plaintiffs have presented evidence

9   that they suffer from emotional distress.   While Butler's

10  emotional distress seems to be significantly less than Newman's,

11  it is sufficient.   <u>See</u> <u>Graves</u>, 2006 WL 768831, at *6.

12  Accordingly, the court will deny defendants' motions for summary

13  judgment on this claim.

14      F.   <u>Plaintiffs' Negligent Infliction of Emotional Distress</u>

15           <u>Claim</u>

16           Plaintiffs treat this claim as a general negligence

17  claim.   "The elements of a negligence cause of action are: (1) a

18  legal duty to use due care; (2) a breach of such legal duty; (3)

19  the breach was the proximate or legal cause of the resulting

20  injury; and (4) actual loss or damage resulting from the breach

21  of the duty of care."[8] <u>Megargee v. Wittman</u>, 550 F. Supp. 2d

22  1190, 1209 (E.D. Cal. 2008) (O'Neill, J.).   Under California law,

23  police officers have a duty not to use excessive force.   <u>Knapps</u>

24  <u>v. City of Oakland</u>, 647 F. Supp. 2d 1129, 1164 (N.D. Cal. 2009).

25  "[W]hether an officer breached such duty is 'analyzed under the

26  _____

27      [8]   Wood argues that plaintiffs' claim is barred by
    contributory negligence or assumption of the risk.   The court
28  finds triable issues of fact with respect to these affirmative
    defenses.

1  reasonableness standard of the Fourth Amendment to the United

2  Constitution.'"  <u>Id.</u> (quoting <u>David v. City of Fremont</u>, Nos. C

3  05-46 CW, C 05-956, 2006 WL 2168329, *21 (N.D. Cal. July 31,

4  2006)).  For the reasons discussed above with respect to the

5  excessive force claim, the court will deny defendants' motions

6  for summary judgment on the negligence claim.

7      G.   <u>Newman's ADA and Rehabilitation Act Claims against</u>

8           <u>Delta College</u>

9           In the education context, "[t]o make out a prima facie

10  case under either the ADA or Rehabilitation Act [a plaintiff]

11  must show that (1) she is disabled under the Act; (2) she is

12  'otherwise qualified' to remain a student at the [] School, i.e.,

13  she can meet the essential eligibility requirements of the

14  school, with or without reasonable accommodation; (3) she was

15  dismissed solely because of her disability; and (4) the [] School

16  receives federal financial assistance (for the Rehabilitation Act

17  claim), or is a public entity (for the ADA claim)."  <u>Zukle v.</u>

18  <u>Regents of Univ. of Cal.</u>, 166 F.3d 1041, 1045 (9th Cir. 1999)

19  (explaining 29 U.S.C. § 794 (Rehabilitation Act provision) and 42

20  U.S.C. § 12132 (ADA provision)).

21      The ADA regulations require a public entity to "make

22  reasonable modifications in policies, practices, or procedures

23  when the modifications are necessary to avoid discrimination on

24  the basis of disability, unless the public entity can demonstrate

25  that making the modifications would fundamentally alter the

26  nature of the services, program, or activity."  28 C.F.R. §

27  35.130(b)(7); <u>see also</u> 34 C.F.R. § 104.44(a).

28      Here, Newman bases her ADA and Rehabilitation Act

claims on Delta College (1) suspending Newman from attending

classes following the March 13, 2008, incident, (2) "failing to

conduct a proper analysis of her disability which resulted in a

failure to recognize her need for a caregiver to be present in

classes with her," and (3) failing to provide "regular and

consistent counseling to ensure her academic progress." (Pls.'

Opp'n to Delta College & Ruley's Mot. at 96:8-13.)

Newman met with someone from Delta College's DSPS

office on June 29, 2007.  Newman told Roger Keeney that she had

psychological problems.  The only documentation Keeney required

was a letter from the Social Security Administration confirming

that she was receiving disability benefits.  (See Meleyco Decl.

Ex. N (Keeney dep. trans.), at 19, 25-26, 33-34.)  DSPS's

guidelines allow for a student to be accompanied to class by a

caregiver, but Newman was not offered this accommodation until

after the incident.  Newman was allowed some accommodations

before the incident, such as extended test-taking time.

While it appears undisputed that Newman never

specifically requested that a caretaker accompany her to class or

academic counseling, there appears to be a genuine dispute as to

whether Delta College engaged in good faith in the interactive

process.  The Ninth Circuit has explained what is required of a

public entity as follows:

> If [the plaintiff] is disabled, the [public entity] also
> had a duty to engage in an interactive process to
> consider his requested accommodations.  As we have
> explained in the context of our employment cases, once
> the need for accommodation has been established, there is
> a mandatory obligation to engage in an informal
> interactive process "to clarify what the individual needs
> and identify the appropriate accommodation."  This
> interactive process is triggered upon notification of the

disability and the desire for accommodation.  An employer who fails to engage in such an interactive process in good faith may incur liability "if a reasonable accommodation would have been possible."

<u>Vinson v. Thomas</u>, 288 F.3d 1145, 1154 (9th Cir. 2002) (quoting <u>Barnett v. U.S. Air, Inc.</u>, 228 F.3d 1105, 1112, 1114, 1116 (9th Cir. 2000)) (addressing 28 C.F.R. § 35.130(b)(7)) (citations omitted) (emphasis added).

Newman's theory is, had Delta College engaged in good faith in the interactive process, the incident of March, 13, 2008, may have been prevented.  If the incident had been prevented, Newman would not have been suspended.  The Ninth Circuit has noted the connection between the failure to accommodate and termination in the employment context.  <u>See</u> <u>Humphrey v. Mem'l Hosps. Ass'n</u>, 239 F.3d 1128, 1138-39 (9th Cir. 2001) ("Often the two claims, are, from a practical standpoint, the same. . . . In this case, MHA's stated reason for Humphrey's termination was absenteeism and tardiness.  For purposes of the ADA, with a few exceptions, conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination.  The link between the disability and termination is particularly strong where it is the employer's failure to reasonably accommodate a known disability that leads to discharge for performance inadequacies resulting from that disability.").  Thus, the genuine issue with respect to the failure to accommodate leads the court to deny Delta College's motion for summary judgment as to the ADA and Rehabilitation Act

24

1  claims.[9]

2      H.    <u>Newman's California's Unruh Act and DPA Claim against</u>

3          <u>Delta College</u>

4        "The DPA and the Unruh Act[10] both focus on ensuring

5  that persons with disabilities have equal access to public

6  businesses, facilities, and other accommodations." <u>Bass v. Cnty.</u>

7  <u>of Butte</u>, 458 F.3d 978, 980 (9th Cir. 2006); <u>see</u> Cal. Civil Code

8  §§ 51, 54.1; <u>see generally</u> <u>Molski v. Arciero Wine Grp.</u>

9  164 Cal. App. 4th 786, 792 (2d Dist. 2008) (explaining how

10 remedies differ under Unruh Act and DPA); <u>C.B. v. Sonora School</u>

11 <u>Dist.</u>, 691 F. Supp. 2d 1123, 1154 (E.D. Cal. 2009) (Wanger, J.)

12 (same).

13       Violations of the ADA generally constitute violations

14 of the Unruh Act and DPA.  <u>See</u> Cal. Civ. Code §§ 51(f), 54(c);

15

---

16      [9]    While not raised by Delta College, the court notes that
17 "[t]o recover monetary damages under Title II of the ADA or the
   Rehabilitation Act, a plaintiff must prove intentional
18 discrimination on the part of the defendant," and the standard
   for intentional discrimination is deliberate indifference.
19 <u>Duvall v. Cnty. of Kitsap</u>, 260 F.3d 1124, 1138 (9th Cir. 2001).
   "Deliberate indifference requires both knowledge that a harm to a
20 federally protected right is substantially likely, and a failure
   to act upon that likelihood." <u>Id.</u> at 1139.  Thus, to recover
21 monetary damages at trial on the ADA and Rehabilitation Act
   claims, Newman must prove intentional discrimination.

22      [10]    The Unruh Act provides that "[a]ll persons within the
23 jurisdiction of this state are free and equal, and no matter what
   their . . . disability . . . are entitled to the full and equal
24 accommodations, advantages, facilities, privileges, or services
   in all business establishments of every kind whatsoever."  Cal.
25 Civ. Code § 51(b).

26      The DPA provides that "[i]ndividuals with disabilities
   shall be entitled to full and equal access, as other members of
27 the general public, to accommodations, advantages, facilities, .
   . . and privileges of . . . places of public accommodation . . .
28 and other places to which the general public is invited . . . ."
   Cal. Civ. Code § 54.1.

1   <u>Bass</u>, 458 F.3d 978.  <u>But see Bass</u> 458 F.3d 978 (holding that the

2   Acts do not extend to ADA employment violations).

3        Here, based on her opposition, it appears that Newman's

4   Unruh Act and DPA claims are based solely on the ADA violation.

5   Because Newman has a triable ADA claim, the court will deny the

6   motion with respect to these state law claims.[11]

7        I.   <u>California Government Code Section 11135</u>

8        Remedies for violations of California Government Code

9   section 11135, which prohibits entities receiving funding from

10  the state from discriminating based on disability, are limited to

11  "a civil action for equitable relief."  Cal. Gov't Code § 11139.

12       Here, at the oral argument, Newman's counsel stated

13  that the only equitable relief Newman seeks is an injunction

14  requiring training of Delta College police officers.  Delta

15  College's only argument for summary judgment on this claim is

16  that Newman will not be entitled to equitable relief under

17  California Civil Code section 3422 (describing grounds for a

18  permanent injunction).  <u>See</u> Cal. Civil Code § 3422.  However,

19  Delta College has not demonstrated based on the evidence that

20

21       [11]   However, to the extent the Unruh Act and DPA claims are
    based on violations of Title II of the ADA, Newman will have to
22  prove intentional discrimination at trial to recover damages.
    <u>See</u> <u>C.B. v. Sonora Sch. Dist.</u>, 691 F. Supp. 2d 1123, 1155 (E.D.
23  Cal. 2009) (Wanger, J.) ("[T]o the extent that the Complaint may
    be construed to allege a violation of the Unruh Civil Rights Act
24  or the Disabled Persons Act based on a violation of the ADA,
    because the Complaint alleges a violation of Title II of the ADA,
25  Plaintiff must plead and prove intentional discrimination in
    order to state a claim for relief in the First Cause of
26  Action.").  If Newman's claims are not based on ADA violations,
    then whether Newman must prove intent to recover damages is based
27  on whether the claim is brought under the DPA or Unruh Act.  <u>See</u>
    <u>Molski v. Arciero Wine Grp.</u>, 164 Cal. App. 4th 786, 792 (2d Dist.
28  2008) (explaining that Unruh Act requires intent and DPA does
    not).

Newman, who remains a student at Delta College, will not be
entitled to equitable relief.

　　　J.　California's Government Claims Act

　　　　　In denying Wood's motion to dismiss in this action,
this court held:

> Plaintiffs' efforts substantially complied with the
> Government Claims Act because plaintiffs' complaints
> alerted Delta College to the basis of the claims against
> Delta College, Ruley, and Wood, and the amount of
> damages that plaintiffs were seeking.  In plaintiffs'
> Online Citizen Complaint form, Newman even specifically
> identified Wood and Ruley and the officers who used
> force against her and arrested her.  Under the facts as
> alleged, Delta College should have been aware that a
> monetary claim was being asserted against it and had
> sufficient information such that it could thoroughly
> investigate plaintiffs' claims.  Plaintiffs accordingly
> have sufficiently alleged substantial compliance with
> the claims presentation requirements of the Government
> Claims Act.

Newman v. San Joaquin Delta Cmty. College Dist., No. CIV.
2:09-3441, 2010 WL 3633737, at *6 (E.D. Cal. Sept. 14, 2010).

　　　　　Even if the court only considers the documents received
by Delta College,[12] these documents include: (1) "Unlawful
Discrimination Complaint Forms,"[13] (Butler Decl. II Exs. L1-L2);
(2) a March 21, 2008, letter, titled "Civil Rights Violation,"[14]

----

[12]　Delta College has not argued that the vice presidents
and deans whom received these documents were the wrong people.
See Cal. Gov't Code § 915.

[13]　Plaintiffs alleged discrimination based on mental
disability, physical disability, and race.  Butler requested
"compensation for the Police Brutality."  (Butler Decl. II Exs.
L1-L2.)

[14]　This letter describes the incident and suspension and
states that Delta College knew that Newman was disabled.  The
letter concludes: "We feel that our civil and human rights have
been grossly violated by the police of Delta College and the
Administration.  We would like your help, guidance, and Any type
of advice you have to help us.  Be advised that we are not
willing to turn the other cheek in regards to this incident.

(id. Ex. C); (3) a May 21, 2008, letter, titled "Civil Rights Violations, Unfair and Illegal Treatment of a Mentally and Physically Handicapped Student,"[15] (id. Ex. K); (4) "Statement of Damages (Personal Injury or Wrongful Death)" forms,[16] (id. Exs. O1-O2; Newman Decl. II O1-O2); and (5) numerous letters from Newman appealing her suspension.  (See, e.g., Newman Decl. II Exs. D, D1.)  Butler states that a vice president at Delta College refused to assist him "in trying to 'extract money from Delta College.'"  (Butler Decl. II ¶ 13.)

In response to the Unlawful Discrimination Complaint Forms, a Delta College vice president wrote a letter to plaintiffs.  The letter described the incident and subsequent suspension: "Ms. Newman and Mr. Butler feel their civil and human rights have been grossly violated by the police and administration of Delta College."  The official concluded: "We found that the Campus Police acted appropriately given their training and procedures for similar situations." (Id. Ex. Q.)

Taking the documents together, which the court reasonably infers was intended, plaintiffs substantially complied

_____

Whatever it takes they should be held accountable for the beatings in the classroom and any difficulties as a result of." (Id. Ex. C.)

[15]  This letter describes the incident, suspension, and Newman's disability, and alleges that the individual defendants' and College's conduct was based on race and Newman's disability. The letter states that "this Complaint against SJDC and the DCPD . . . is not going away or [to] be swept under the rug."  The letter concludes by asking for someone to intervene on plaintiffs' behalf.  (Id. Ex. K.)

[16]  Butler sought $2 million in general damages for pain, suffering, inconvenience, and emotional distress and $50 million in punitive damages; Newman sought $2 million in general damages and $50 million in punitive damages.

1  or Delta College failed to notify plaintiffs of any deficiencies
2  in the "claims as presented," thus waiving the requirement.  <u>See</u>
3  <u>City of San Jose v. Super. Ct.</u>, 12 Cal. 3d 447, 456-57 (1974)
4  (discussing substantial compliance); <u>Wood v. Riverside Gen.</u>
5  <u>Hosp.</u>, 25 Cal. App. 4th 1113, 1118 (4th Dist. 1994) (same); <u>City</u>
6  <u>of San Jose v. Super. Ct.</u>, 12 Cal. 3d 447, 456-57 (1974) (same);
7  <u>Loehr v. Ventura Cnty. Cmty. Coll. Dist.</u>, 147 Cal. App. 3d 1071,
8  1083 (2d Dist. 1983) (same); <u>Alliance Fin. v. City & Cnty. of San</u>
9  <u>Francisco</u>, 64 Cal. App. 4th 635, 643 (1st Dist. 1998) (discussing
10  waiver); <u>Santos v. Merritt College</u>, No. C-07-5227, 2008 WL
11  4570708, at *5 (N.D. Cal. Oct. 14, 2008) (same).  Accordingly,
12  the court will deny defendants' motion for summary judgment on
13  presentment-requirement grounds.[17]

14       IT IS THEREFORE ORDERED that Delta College and Ruley's
15  motion for summary judgment or partial summary judgment be, and
16  the same hereby is, DENIED.

17       IT IS FURTHER ORDERED that Wood's motion for summary
18  judgment or adjudication be, and the same hereby is, DENIED.

19  DATED:  August 31, 2011
20                              _____
                                WILLIAM B. SHUBB
21                              UNITED STATES DISTRICT JUDGE

22

23       [17]    A remaining issue is damages and causation.  The court
    declines to address defendants' argument that punitive damages
24  are not justified.  <u>See</u> Fed. R. Civ. P. 56(g) (If a court does
    not grant all relief requested by a motion for summary judgment,
25  "it <u>may</u> enter an order stating any material fact--including an
    item of damages or other relief--that is not genuinely in dispute
26  and treating the fact as established in the case.") (emphasis
    added).
27       The court also declines to address Wood's arguments
    with respect to whether Butler is entitled to loss of consortium
28  damages and whether plaintiffs suffered actual damages and, if
    so, whether defendants caused them.